## Case No. 10,259.

### NICOLL et al. v. AMERICAN INS. CO.

[3 Woodb. & M. 529.] [1]

Circuit Court, D. Rhode Island. Nov. Term, 1847.

PRINCIPAL AND AGENT—EVIDENCE OF RELATION—FIRE INSURANCE—REPRESENTATIONS TO SECURE POLICY—SURVEY—WARRANTY.

1. When no evidence exists of the written appointment of an agent, the jury must judge by testimony of his acts and the recognitions thereof by his principal, as to the extent or existence of his agency.

[Cited in Aetna Ins. Co. v. Maguire, 51 Ill. 351; Pierce v. Nashua Fire Ins. Co., 50 N. H. 302. Cited in brief in Libby v. Union Nat. Bank, 99 Ill. 627.]

2. If the agent of a fire insurance company has received two sets of representations, the last being for the present policy, the makers thereof are not bound, except by the last set.

3. If either party must suffer by the fault of the agent, it should be the principal of the agent.

[Cited in Aetna Live Stock, F. & T. Ins. Co. v. Olmstead, 21 Mich. 249.]

4. A party is not bound by representations never made for this case, and never presented as grounds for the present insurance.

5. If A, agent of a party in making representations for an insurance, reads a set made by him elsewhere, and B. agent of the other party, writes them down, and A meant to sign only a

1 [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

true copy. and B knew this, it is very questionable whether A's principals are liable for the difference or error.

6. If the jury believe a letter was afterwards delivered to B making the necessary corrections, it was sufficient, provided the jury believe B to have been then an agent of his party to the extent of receiving such information.

7. The representations for insurance in this case are dehors the policy, and to be treated as representations and not as warranties.

8. The words "survey and description" in the printed policy refer to surveys made by some third party, and the description attached to the plan or map.

9. A warrantee or guarantee is required to the truth of these.

10. In fire insurance the representations of the insured are not to be treated as guaranties or warranties.

11. If considered as guaranties, no variation from them can exist in the smallest particular.

12. For A's representations the insured is not answerable. unless they differ in a material respect from the truth, or are departed from in a material manner.

[Cited in Phoenix Ins. Co. v. Benton, 87 Ind. 137.]

13. If representations differ materially the policy cannot be enforced.

14. If the warranty fails the policy never attaches.

15. The best test of a material variation is that it increases the risk so as to require a larger premium.

16. If answers of party as to the watch kept were ambiguous and capable of different conclusions, the other party should have asked for explanations before taking the policy.

17. If a material departure from the representations has taken place, the party cannot recover, although the fire was not caused by that departure.

18. Exceptions. if to be relied on by a bill, should be so taken and notified at the trial.

19. When taken at the trial, the court may allow them to be reduced to form afterwards and subsequently filed nunc pro tunc.

20. However immaterial to the court may be the time when the exception is made, the successful party cannot be subjected to it, except on legal principles.

This was assumpsit on a policy of insurance against fire, dated April 15th, 1846, for one year on $5,000 worth of movable machinery in a cotton factory belonging to the plaintiffs. It was situated in the county of Orange, in the state of New York, and was alleged to have been burned with all its machinery on the 10th of September, 1846, and proper proof and notice of it given to the respondents on the 12th of that month. The premium was 1¾ per cent. The policy was offered in evidence, showing further, that the whole factory and machinery were valued at $34,000, and the plaintiffs had liberty to get $19,000 insured elsewhere. It was shown that an insurance for $5,000 at a like premium had been effected at the Franklin Fire Insurance Company in Philadelphia, and at Boston for $12,000.

The chief points in dispute were these. The insurance was effected by [Leonard D.] Nicoll, agent for the plaintiffs, on application to Bigelow, agent of the defendants, in New York City. This property had been previously insured in part in a combination insurance office in New York, and after the great fire there in July, 1845, the insurance offices suffered so much, that the plaintiffs felt desirous of changing their insurance, and applied through another Mr. Nicoll to Mr. Bigelow, who acted for several offices at the eastward for that purpose. The exact day or month of the application did not appear, but Nicoll testified it was in the autumn, while Bigelow believed it was not till spring. The written representations on which the insurance was asked were prepared by Nicoll and Bigelow together, meaning they should be a copy of those which had before been made to the combination office, Nicoll reading, and Bigelow writing down as he read from that paper. The representations so prepared were forwarded by Bigelow, and Nicoll swore he was afterwards told in reply that the office was then unwilling to insure. That he again applied in April, 1846, with representations in some respects different and like those which had been made to the Franklin Insurance Office in Philadelphia, and of which he kept a copy, and that these were sent by Bigelow, and the policy now in suit returned thereon. Bigelow had no recollection of these last representations. nor of the first ones being returned, and those first ones without any date were now offered in evidence by the respondents as those on which the present policy issued. Various facts were offered in evidence, which need not be repeated, to render it probable which were the real representations made in order to obtain the insurance now in dispute. Much evidence was offered on both sides, also, to show at what hour the fire broke out, whether at nine o'clock or after eleven p. m., and whether in the dressing room where the stoves stood, or in the carding room, in which no fire was used, but the strength of it was in favor of the latest hour, and of the carding room as the place. The material difference between the two representations produced were that those offered by the respondents spoke of a watch of the lights and fires till nine p. m., as proper, without distinctly saying that one was so kept, while the other stated a watch was kept from the middle of September to the middle of March till nine p. m. The former stated, likewise, that no heat was used in warming the building, except outside in a furnace, and no stoves used inside, nor sizing made there, while the latter stated that a stove was used in the dressing room to make the sizing there. The former furthermore stated that casks filled with water were kept for safety in the different rooms, as did the latter, while the evidence was contradictory, whether they were all full at the time of the fire, though it appeared that some were, and some tanks of water also, and pipes for conducting water from a spring into each story. The plain-

tiffs proved, likewise, by their agent, that in May, 1846, being uncertain whether the representations stated a stove was then used or not in the dressing room to make sizing, addressed a letter to Bigelow as agent for the defendants, notifying him that such was the fact, and wishing him to communicate it to the office if necessary. A press copy of it was proved and produced by another person, taken at the time, and he testified that the original was delivered to Bigelow, but the latter swore he had no recollection of receiving or forwarding it to the office, and insisted he was not an agent for the respondents, or at most, was one for limited objects, not embracing this. It further appeared that the representations now produced by the respondents were not, in some of these respects, exact copies of those to the combination insurance company, as they stated the use of a stove to make size in the dressing room. There existed on the same sheet with the policy certain printed conditions, and among them one that any "survey and description" should be regarded as a warranty, and another that no insurance would be made on factories at a distance, except on written representations in answer to certain written interrogatories applicable to such property. It was also proved by the plaintiffs that fires and lights are not generally used much in factories between the middle of March and September, and that while used by them, a watch was kept till nine o'clock p. m., but not at other portions of the year.

The jury returned a verdict for the plaintiffs.

Fancher & Carpenter, for plaintiffs.

Mr. Bradley and R. W. Green, for defendants.

In the course of the trial the following rulings and instructions were given on points of law deemed material:

WOODBURY, Circuit Justice. As there is no evidence of the written appointment of Mr. Bigelow as agent of the defendants, the jury must decide on the fact and the extent of his agency by what he testifies and did, coupled with the acts of the defendants recognizing him. If the jury believe he was an agent to receive the representations to obtain insurances, and a policy is returned and delivered after two sets of representations have been delivered to him, but the last set for the present policy, the plaintiffs are not here bound except by the last set. If either party must suffer by his mistake, it must be the defendants, whose agent he is, and the plaintiffs are not to be bound in this case by representations never made for this case, and never presented to the defendants, or their agent, as the ground for the present insurance. Again, if the representations produced by the defendants do not contain all which those to the combination office did, by the mistake of the agent of the defend-

ants in copying, and the plaintiffs meant to sign through Nicoll only a true copy, and Bigelow knew this, it is very questionable whether the plaintiffs are liable for the error or difference. But however that may be, the letter written by Nicoll in May, 1846, correcting any difference, if one existed, as to the stove and sizing being before this loss, and being actually delivered to Bigelow was a sufficient correction, if the jury believed it to have been done at the time, and that Bigelow was agent of the defendants to the extent of receiving such information.

In respect to the representations which the jury may find ought to govern, they are in this case to be treated as representations only, and not as warranties. They are dehors the policy, and not referred to in it as warranties. 1 Phil. Ins. 27; 5 Hill, 101, 188; 1 Durn. & E. [1 Term R.] 343. The condition annexed making a "survey and description" a warranty, relates to a survey made by some third person employed for that purpose and the description attached to the plan or map. To the truth of these a warranty or guaranty is required, because they are not representations made by the insured, but third persons. Representations made by the insured were not needed to be guarantied, and extend to so many matters as to be improper for warranties about all of them, and if regarded otherwise, would tend to ensnare and mislead the insured. 2 Hall, 589; Cowp. 785; Doug. 11, note. If considered warranties, they cannot be deviated from in the smallest particular, and must with exactness correspond to all details when made, whether material or immaterial. Whereas if regarded as representations, which is the character attached to these by the insured, and which is the just view looking to all interests, the insured is not answerable on account of them, unless they differ in material respects from the truth or are departed from in a material manner. Clark v. Manufacturers' Ins. Co. [Case No. 2,829], and cases there cited; 3 Kent. Comm. 282; 1 Phil. Ins. 27. If these last circumstances of misrepresentations occur, then the policy cannot be enforced, and in the former case of a warranty failing it never attaches. Clark v. Manufacturers' Ins. Co. [supra]; [Columbian Ins. Co. of Alexandria v. Lawrence] 2 Pet. [27 U. S.] 26; [Hazard v. New England Marine Ins. Co.] 8 Pet. [33 U. S.] 557; 3 Hill, 501; 8 Metc. [Mass.] 114; Dennison v. Thomaston Mut. Ins. Co., 20 Me. 125. Perhaps the best test as to the materiality of the variance is, that it increases the risk so as to require a larger premium. The rule that it must be material, and the test of its being material, that it increases the risk, is such that where the shade of difference in the risk is so slight as not to require an increased premium, perhaps it will be safe to say this is proof that the difference is not material.

One of the first great opinions of Lord

Mansfield in insurance cases was connected with the subject of representations and concealment, and the former were held by him to be sufficient, if disclosing all not generally known, not speculative, and not as a public officer required to be silent about. Carter v. Boehm, 3 Burrows, 1905. Another instruction I feel bound to give, is that if the answers of the plaintiffs as to a watch in the representations produced by the respondents, are so doubtful or ambiguous as to lead to different conclusions, the defendants should have asked for explanations before taking the insurance. Phil. Ins. 224, 232; [Livingston v. Maryland Ins. Co.] 7 Cranch [11 U. S.] 535. Or the construction most favorable to the plaintiffs is to be followed. Lord Mansfield in 3 Burrows, 1918. This construction would exonerate the plaintiffs as to a watch on the representations now offered, as they refer to keeping a watch of fires and lights, and these were not used when this loss occurred, and when they were used a watch was kept. So they would be exonerated, if the other representations were the true ones made for this policy and specified that the watch was to be kept only from the middle of September to the middle of March. In this last event, also, there was no violation of the representations as to heating the building, keeping a stove or making sizing within, and none in the event that the first representations are to govern, provided the notice was given duly in May, 1846, that a stove was in use in the dressing room to make sizing, &c.

In respect to the tanks of water and the pipes instead of the hogsheads, it is for the jury to say whether there was any substantial variance from the representations. No fraud is here set up, and consequently the law on that need not be gone into. But it must be remembered that if the real representations made for this policy have in any material point been departed from by the plaintiffs, they cannot recover, whether that departure caused the fire and loss or not. 3 Kent, Comm. 282. It would, then, be sufficient for the defendants to say that the implied if not express condition on which they engaged to be bound has not been complied with by the plaintiffs. And as insurances are matters of strict contract and good faith or fidelity to its provisions, parties cannot recover on them, however unfortunate, unless they comply with such provisions and their own representations. Certainly not unless they comply with the latter, at least in substance, or in all material respects.

. The jury returned a verdict for the plaintiffs for the amount insured.

After several days had elapsed, and the court was on the eve of an adjournment, the defendants asked leave to file a bill of exceptions to some of the rulings of the court at the trial.

THE COURT stated that the exceptions, if to be relied on by a bill, should be so taken and notified at the trial. Walton v. U. S., 9 Wheat. [22 U. S.] 651; Patterson v. Philips, 1 How. (Miss.) 572; [Bradstreet v. Thomas] 4 Pet. [29 U. S.] 102. If not then taken, they cannot be settled correctly by fresh recollection, or by the observations and oaths of the by-standers, which are in some states by statute resorted to under contradictions. So the form of the bill itself is, that the exceptions were taken at the trial. Stimpson v. West Chester R. Co., 3 How. [44 U. S.] 553. When taken at the trial, the court may allow them to be reduced to form afterwards and filed at a subsequent day within a reasonable time nunc pro tunc. [Bradstreet v. Thomas] 4 Pet. [29 U. S.] 102; 3 Cow. 32; 9 Johns. 345; 2 Scam. 490; 3 Scam. 17, 24; 1 Gill, 66; 2 Tidd, Prac. 913. In this instance, as the plaintiffs may possibly have supposed, that raising questions of law at the trial was enough, without stating any exceptions in form to the ruling on them, I should be inclined to waive the latter, if the exceptions had been relied on immediately after the rulings were made, and a bill had been presented then, or time asked then to prepare one. But this not being done till several days had expired, I think it too late now. The counsel for the defendants, however, feeling anxious to obtain time now to prepare the bill and have it signed and allowed, he is at liberty to do it, stating in the bill itself the days the rulings were made, the verdict found, and this application made, so that the court above may judge whether the exception was duly taken. Both parties have rights here, and however immaterial it may be to the court when the exception is made, the plaintiffs cannot be subjected to it, except on legal principles.

The bill was accordingly prepared in that way and signed, but no writ of error brought.