WILBURN BOAT COMPANY, a corporation, Glenn Wilburn, Frank Wilburn and Henry Wilburn, Plaintiffs,

v.

FIREMAN'S FUND INSURANCE COMPANY, a corporation, Defendant.

Civ. A. No. 503.

United States District Court
E. D. Texas,
Sherman Division.

July 30, 1960.

Gullett & Gullett, Denison, Tex., Hobert Price, Dallas, Tex., T. G. Schirmeyer, Houston, Tex., for plaintiffs.

Edward B. Hayes, Chicago, Ill., Joe A. Keith, Sherman, Tex., for defendant.

SHEEHY, Chief Judge.

The Plaintiffs, Wilburn Boat Company, an Oklahoma corporation, Glenn, Frank and Henry Wilburn, residents and citizens of Grayson County, Texas, instituted this suit in June 1949 seeking to recover from the Defendant Insurance Company, a California corporation, on a policy of insurance issued by the Defendant the sum of $40,000.00 because of the destruction by fire of the motor yacht Wanderer. Unfortunately, this is the third time that this Court has been called upon to determine the rights of the parties hereto.

The case was originally tried before my predecessor without a jury who concluded that the rights of the parties were to be governed by the general admiralty law, and in view of the fact that Plaintiffs had unquestionably failed to comply with certain provisions of the policy of insurance in question and had violated certain warranties contained in the policy, the Plaintiffs could not recover. The Court of Appeals affirmed the judgment of this Court denying the Plaintiffs a recovery.[1] The Supreme Court granted certiorari and held that the general admiralty law did not apply to the contract of insurance in question, reversed the judgments of the Court of Appeals and of this Court and remanded the case to this Court for trial under appropriate state law without giving any indication whatsoever as to the appropriate state.[2] Upon the case being remanded to this Court, the parties stipulated in writing that the case should be tried solely on the evidence admitted and judicial admissions of fact heretofore made in this Court and on which the original judgment was entered on December 13, 1951. Pursuant to that agreement, this Court, after having studied the lengthy written briefs submitted by the attorneys for the respective parties and after hearing oral argument presented by said attorneys, prepared and filed on May 29, 1957, a rather extensive Memorandum Decision as the Findings of Fact and Conclusions of Law, to which Memorandum Decision reference is here made. Based on those findings and conclusions judgment was entered allowing Plaintiffs a recovery in the amount of $40,000.00 with interest. The holding that Plaintiffs were entitled to recover was founded on a finding and conclusion to the effect that the insurance policy in ques-

1. Wilburn Boat Co. et al. v. Fireman's Fund Ins. Co. (5th Cir.) 201 F.2d 833.

2. Wilburn Boat Co. et al. v. Fireman's Fund Ins. Co., 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337.

tion was a Texas contract and in making that finding and conclusion I took judicial notice of the fact that the Defendant had a permit to do and was doing business in the State of Texas in June 1948 and at all other times pertinent hereto. The Defendant appealed from the last mentioned judgment, and the Court of Appeals reversed said judgment and remanded the case to this Court for another trial, and in so doing held that this Court did not have the right to take judicial notice of the fact that the Defendant had a permit to do and was doing business in the State of Texas.[3] The Supreme Court denied Defendant's Petition for Writ of Certiorari.[4] During the November 1959 term this case was again tried before the undersigned without the intervention of a jury, and the facts as found from the evidence introduced at the last mentioned trial are virtually the same as those found and set forth in the Memorandum Decision filed herein on May 29, 1957, and above referred to, and are as hereinafter stated.

At all times pertinent hereto Glenn, Frank and Henry Wilburn, and each of them, were residents and citizens of Denison, Grayson County, Texas, and the H. H. Cleaveland Agency of Rock Island, Illinois, hereinafter referred to as Cleaveland Agency, was a duly authorized agent of the Defendant and was engaged in the writing of insurance, including marine insurance, for the Defendant. On May 22, 1947, the Defendant issued through the Cleaveland Agency its marine hull policy No. YA–28579, the policy in question herein, to Robert D. Marshall, a resident of Rock Island, Illinois, and John Shuler, a resident of Des Moines, Iowa, the then owners of the Wanderer, the yacht or vessel here in question, under the terms of which the Wanderer was insured in the amount of $10,000.00 from loss by fire. At the time such policy of insurance was issued the Wanderer was located in waters at or near Greenville, Mississippi. The policy contained a provision to the effect that it was warranted by the Assured, or the owners of the vessel, that the vessel would be used for private pleasure purposes during the term of the policy and would not be hired or chartered unless permission to so do was granted by endorsement to the policy. Among the conditions of the policy was a provision to the effect that the insurance extended by the policy shall be void in case the policy or the interest insured thereby should be sold, assigned, transferred or pledged without the previous consent of the Defendant. Another pertinent provision of the policy was:

"This Entire Policy Shall Be Void if the assured has concealed *or* misrepresented any material fact or circumstance concerning this insurance or the subject matter thereof, *or*, in case of any fraud *or* false swearing by the Assured touching any matter relating to this insurance or the subject matter thereof; whether before or after loss."

In June 1948 and for sometime prior thereto and at all other times pertinent hereto the Defendant had a permit to do and was doing business in the State of Texas.

On or about June 4, 1948, and at a time when the coverage of the insurance policy in question had been extended to May 22, 1949, Glenn, Frank and Henry Wilburn purchased the Wanderer from Robert D. Marshall and John Shuler for a consideration of $9,000.00. As a result of this purchase each of said Wilburns owned an undivided one-third interest in the boat. At that time the Wanderer was still located on waters at or near Greenville, Mississippi. It was the intention of the Wilburns to move said boat from its mooring in Greenville, Mississippi, to Lake Texoma, a large inland lake located near Denison, Texas, with part of said lake being located in Texas

3. Fireman's Fund Ins. Co. v. Wilburn Boat Co., et al. (5th Cir.) 259 F.2d 662.

4. Fireman's Fund Ins. Co. v. Wilburn Boat Co., et al., 359 U.S. 925, 79 S.Ct. 607. 3 L.Ed. 628.

and the remainder thereof located in the State of Oklahoma. The Wilburns moved the boat by water from Greenville, Mississippi, up the Mississippi River to the Red River and then up the Red River to the Lake Texoma Dam near Denison, Texas. The boat was then moved overland around the dam and launched on Lake Texoma in July or August 1948 after certain changes and repairs were made to the boat. After the boat was launched on Lake Texoma it was taken to the Texoma Boat and Dock Company, a boat repair business located in Texas on Lake Texoma, where additional extensive repairs and remodeling were performed on the boat. At the time the Wilburns purchased the boat they intended to use it for the carrying of passengers for hire on Lake Texoma.

For some time prior to June 4, 1948, and at all pertinent times subsequent thereto R. L. McKinney of Denison, Texas, owned and operated an insurance agency in Denison, Texas, under the name of R. L. McKinney Agency, writing insurance of various types for various insurance companies he represented. McKinney prior to June 4, 1948, had written various types of insurance for the Wilburns. The Defendant never at any time prior to June 4, 1948, authorized McKinney to solicit or write insurance of any kind for it. At or about the time the Wilburns purchased the Wanderer Frank Wilburn contacted R. L. McKinney in Denison, Texas, and requested McKinney to obtain for himself and his brothers insurance coverage on the Wanderer. McKinney, who was not authorized to write on behalf of any of the companies he represented the marine insurance the Wilburns desired on the Wanderer, made a telephone call to a representative of the Cleaveland Agency in Rock Island, Illinois. In this telephone conversation McKinney advised the Cleaveland Agency representative, namely, one J. B. White, that he, McKinney, was an insurance agent in Denison, Texas, and was acting as agent for Frank and Henry Wilburn who had purchased the Wanderer; that he, McKinney, had

no facilities for writing the hull coverage desired and requested White to arrange with the defendant to continue its coverage of the Wanderer while the boat was being moved from Greenville, Mississippi to Lake Texoma. Representatives of the Cleaveland Agency then contacted the Chicago office of the Defendant and made known to the Defendant the request made by McKinney for the transfer of the coverage of the Wanderer to the Wilburns. The Defendant, through its Chicago office, agreed to transfer the coverage of the policy in question to the Wilburns, and on June 8, 1948, the Cleaveland Agency wired McKinney at Denison, Texas, to the effect that the Defendant was binding the Wanderer with full marine perils coverage and that endorsements would follow. Thereafter, the Defendant issued an endorsement to the policy in question showing that the name of the assured, effective June 8, 1948, was changed from Robert D. Marshall and John Shuler to Frank and Henry Wilburn. This endorsement was transmitted by the Defendant to the Cleaveland Agency who, in turn, forwarded same by mail to McKinney in Denison, Texas.

The premium for the coverage extended the Wilburns on the Wanderer, as aforesaid, was the sum of $419.56. The Wilburns paid this premium by issuing their check drawn on a Denison, Texas, bank payable to the Cleaveland Agency, which check they, in turn, delivered to McKinney who, in turn, transmitted it to the Cleaveland Agency. The Cleaveland Agency then caused the check to be presented for payment, and same was paid by the Denison, Texas, bank upon which it was drawn. By letter dated August 6, 1948, McKinney requested the Cleaveland Agency to endorse the policy of insurance in question so as to show Glenn, Frank and Henry Wilburn, d/b/a Wilburn's Boat Company as the assured. By endorsement dated August 6, 1948, the Defendant so endorsed the policy and such endorsement was forwarded to McKinney at Denison, Texas. On October 4, 1948, Defendant again endorsed the

policy because of the fact that the Wilburns had installed a diesel marine engine in the Wanderer and as a result of that were entitled to a return of a portion of the premium previously charged by the Defendant. On December 14, 1948, McKinney addressed a letter to the Cleaveland Agency in which he advised, in effect, that the Wilburn Brothers then had an investment of $40,000.00 in the Wanderer, and that they would like to know what rate would be charged to increase the insurance in question to $40,-000.00. On December 20, 1948, the Cleaveland Agency wired McKinney the amount the $30,000.00 additional insurance would cost. By letter dated December 21, 1948, McKinney requested the Cleaveland Agency to increase the coverage of the policy in question by $30,-000.00. The Defendant, upon being advised by the Cleaveland Agency of such request for additional insurance, caused such additional insurance to be issued by endorsement to the policy in question effective December 30, 1948, as a result of which the coverage of the policy in question was increased to $40,000.00.[5] This endorsement was forwarded by the Cleaveland Agency to McKinney at Denison, Texas, by letter dated December 20, 1949. The policy of insurance in question and each and every endorsement thereto, and above mentioned, was delivered by the Cleaveland Agency through the United States mails to McKinney at Denison, Texas, and, in turn, delivered by McKinney to the Wilburns in Denison, Texas, prior to February 25, 1949. At the time the Defendant agreed to transfer the policy of insurance in question to the Wilburns and at all times subsequent thereto it knew that Glenn, Frank and Henry Wilburn, and each of them, resided in Denison, Texas.

On December 28, 1948, the Defendant's Chicago office wrote the Cleaveland Agency and stated, in effect, that in view of the substantial increase in the coverage they had extended the Wanderer, the Wilburns should have a competent marine surveyor inspect the Wanderer and furnish the Defendant with the surveyor's estimate of its present day value or, in the event a surveyor was not available, a new completed yacht application, together with bills and invoices for the work and for the new installations completed, should be furnished. By letter dated January 25, 1949, addressed to McKinney, the Cleaveland Agency advised McKinney of the Defendant's request that the Wilburns have a competent marine surveyor inspect the vessel and forward to McKinney an application form or blank to be used in making the report of the surveyor's inspection. McKinney made the survey of the Wanderer and the application and survey form furnished McKinney by the Cleaveland Agency, as aforesaid, was completed by McKinney, signed by J. F. (Frank) Wilburn, and transmitted by McKinney to the Cleaveland Agency. The Cleaveland Agency on February 9, 1949, forwarded said completed application and survey report to the Defendant's Chicago office. The application and survey report showed the owners of the Wanderer to be the Wilburn brothers of Denison, Texas; that the cost of the vessel to the Wilburn brothers was $30,000.00 plus $10,000.00 for engine, lighting and fire fighting equipment; that the estimated market value of the vessel was $40,000.00; that the vessel was not subject to any mortgage or other encumbrance; that the water to be navigated by the vessel was Lake Texoma, north of Denison, Texas; that the vessel is used for commercial purposes; that the vessel is chartered; that the summer location of the vessel is Burns Run Resort, Lake Texoma; and that the winter location of the vessel is Lake Texoma Boat & Dock Company. The application and survey report con-

---

5. This endorsement provided in part as follows: "In consideration of an additional premium of $234.01 it is understood and agreed that the amount of insurance hereunder is increased to $40,000.00. It is further understood and agreed that the said vessel, for so much as concerns the Assured by agreement between the assured and Assurer in this Policy is, and shall be valued at $40,000.00."

tained additional information descriptive of the vessel, its engines and rigging. Neither this application and survey report nor a copy thereof nor any other statement nor copy thereof made by the Wilburns in connection with the obtaining of the insurance coverage in question was ever attached to the policy in question. The Defendant, after receiving the application and survey report on or about February 9, 1949, took no further action with reference to the policy prior to the destruction of the Wanderer by fire with the exception of receiving from the Cleaveland Agency a copy of an endorsement to the policy dated October 4, 1948, signed by the Wilburns and showing the replacement of the gasoline engine of the Wanderer with a diesel engine, which endorsement was forwarded to Defendant's Chicago office by letter of the Cleaveland Agency dated February 11, 1949.

On February 25, 1949, the Wanderer was completely destroyed by fire while it was moored to a buoy in Lake Texoma approximately 300 feet from the shore and in the vicinity of Burns Run Resort, which resort is located on the Oklahoma shore line of Lake Texoma. The place where the Wanderer was moored at the time of its destruction by fire is located in the State of Oklahoma.

The Wanderer was not used solely for private pleasure purposes during its ownership by the Plaintiffs, but on the contrary said boat was purchased by the Wilburns with the intention of being chartered and used for hire, was remodeled and re-equipped for such purposes, and to the extent that patronage was available, was chartered and used for hire from the time of its acquisition by the Wilburns until its destruction by fire. However, during that time the boat was only used for hire three or four times. During January 1949 the boat was damaged as the result of a storm. It was then taken from its regular mooring at Burns Run Resort to Lake Texoma Boat and Dock Company for repairs and remained at Lake Texoma Boat and Dock Company undergoing repairs until three or four days before February 25, 1949, at which time it was returned to its regular mooring at Burns Run Resort. Lake Texoma Boat and Dock Company is located in Texas on the Texas shore of Lake Texoma. From the time the boat was damaged by storm in January 1949 up to its destruction by fire on February 25, 1949, it was not used for commercial purposes of any nature and was not used for any purpose except being returned to Burns Run Resort a few days before February 25, 1949, as aforesaid.

In July 1948 Glenn, Frank and Henry Wilburn caused a corporation, known as the Wilburn Boat Company, to be formed under and by virtue of the laws of the State of Oklahoma. The capital stock of this corporation was shown to be $40,000 and the sole and only asset the corporation ever had was the Wanderer, title to which was transferred to it as hereinafter pointed out. All of the stock of the Wilburn Boat Company was owned at all times by Glenn, Frank and Henry Wilburn. The corporation, Wilburn Boat Company, never at any time had a permit to do business in the State of Texas.

In June 1948 the Plaintiffs, Glenn, Frank and Henry Wilburn, borrowed $10,000.00 from the Citizens National Bank of Denison, Texas, and on August 4, 1948, Wilburn Brothers Boat Company, acting by and through Frank and Henry Wilburn, borrowed an additional $10,000.00 from said bank. On the last mentioned date said Wilburn Brothers Boat Company, acting by and through Frank and Henry Wilburn, executed a chattel mortgage covering the Wanderer in favor of the bank to secure the payment of the $20,000.00 borrowed from the bank. On September 24, 1948, by bill of sale of that date, Glenn, Frank and Henry Wilburn transferred the Wanderer to the Plaintiff, Wilburn Boat Company, a corporation, reciting a consideration of $9,000.00. On October 25, 1948, Wilburn Boat Company, a corporation, executed a promissory note in favor of Frank and Henry Wilburn in the amount of $8,000.00, and on the same date said corporation executed a chattel mortgage

covering the Wanderer to secure the payment of said $8,000.00. The sale of the boat to the Wilburn Boat Company, a corporation, and the mortgaging of said boat to the Citizens National Bank of Denison and to Frank and Henry Wilburn, as aforesaid, were done without the consent of the Defendant. At the time the Wanderer was destroyed by fire the indebtedness of $20,000.00 to the Citizens National Bank of Denison and the indebtedness of the Wilburn Boat Company, a corporation, to Frank and Henry Wilburn in the amount of $8,000.00, above mentioned, were unpaid and the chattel mortgages, above mentioned, had not been released.

Immediately upon the Wanderer being destroyed by fire, the Plaintiffs notified McKinney and McKinney, in turn, advised the Cleaveland Agency by telegram on February 25, 1949, of the destruction of said boat by fire. The Cleaveland Agency promptly advised the Defendant's Chicago office of the destruction of the boat. The Plaintiffs, by letter dated March 3, 1949, addressed to the Defendant and to the Cleaveland Agency, forwarded the Defendant a sworn statement of proof of loss covering the loss of the Wanderer. On May 12, 1949, the Defendant, by letter to the Plaintiffs, returned to Plaintiffs the sworn statement of the proof of loss previously submitted by the Plaintiffs and denied liability to the Plaintiffs for the loss and returned to Plaintiffs the premiums Plaintiffs had previously paid the Defendant on the policy in question. The Plaintiffs refused to accept the premiums so returned. In said letter of May 12 it was stated, in effect, that the Defendant was denying liability because: (a) of the sale of the Wanderer by Glenn, Frank and Henry Wilburn to Wilburn Boat Company; (b) of the mortgaging or pledging of said boat by the Plaintiffs; (c) the Plaintiffs did not have an investment of $40,000.00 in the boat; and (d) the boat had been used for commercial purposes and had not been used for pleasure purposes.

It is as difficult to determine with any degree of accuracy the amount of money the Wilburns had invested in the Wanderer at the time of its destruction from the record made at the last trial as it was to determine such from the record made at the first trial. However, the record establishes, and I so find, that without placing a value on the time and effort spent by the three Wilburn brothers in connection with the remodeling or rebuilding of the Wanderer the Wilburns had substantially less than $40,000.00 invested in the boat. Notwithstanding the fact that the Wilburns had invested in the Wanderer a sum less than $40,-000.00, I find from the evidence that the fair cash market value of the Wanderer immediately prior to its destruction was $40,000.00.

The Defendant in asserting a system of fluid defenses contends that the Plaintiffs cannot recover because the Plaintiffs violated the contract of insurance in question in one or more of the following particulars: (1) by using the Wanderer for commercial purposes, i..e., the transporting of passengers for hire and the chartering of the vessel in violation of the warranties contained in the policy to the effect that the vessel would be used only for private purposes; (2) by the pledging or mortgaging of the Wanderer as above set forth; (3) by the sale of the Wanderer by the Wilburn brothers to the Wilburn Boat Company, a corporation; (4) by making certain fraudulent misrepresentations to the Defendant, namely, that they had $40,000.00 invested in the Wanderer, that the boat was not mortgaged, that the Wilburn brothers were the owners of the boat and that the winter location of the Wanderer was at the Texoma Boat and Dock Company; and (5) by concealing from the Defendant certain facts, namely, the transfer of ownership of the Wanderer from the Wilburn brothers to the Wilburn Boat Company, a corporation, the true amount Plaintiffs had invested in the Wanderer, the pledging or mortgaging of the boat and the fact that the boat was being used for commercial purposes. The Plaintiffs contend that the insurance policy in question as between

them and the Defendant is a Texas contract to be governed by the laws of Texas, and under such laws none of the defenses asserted by the Defendant constitutes a defense to Plaintiffs' action. Plaintiffs also contend that R. L. McKinney as to his actions as to the insurance policy in question was the agent and representative of the Defendant. On the other hand, the Defendant contends that McKinney as to such actions was the agent and representative of the Plaintiffs. As to these contentions, I find and conclude that McKinney was not the agent or representative of the Defendant but as to his dealings with reference to the insurance policy in question was the agent or representative of the Plaintiffs. Under the facts in this case McKinney would be the agent of the Defendant only if the provisions of Art. 5056, Revised Civil Statutes of Texas, 1925 (now Art. 21.02 of the Texas Insurance Code, V.A. T.S.) made him such. Said statute as construed by the courts did not make McKinney the agent or representative of the Defendant.[6]

■ Was the policy in question as between the Plaintiffs and Defendant a Texas contract with the rights of the parties thereto to be governed by Texas law? When the base policy was originally issued by the Defendant to Marshall and Shuler, it, of course, was not a Texas contract. However, when the Defendant agreed to transfer the coverage of said policy from Marshall and Shuler to the Wilburn brothers and issued the endorsement to the policy, effective June 8, 1948, which is hereinabove referred to, a new contract of insurance was, in effect, made and entered into between the Defendant and the Wilburns, and it is this contract under which the rights of the parties hereto must be determined. Art. 5068, R.C.S. of Texas, 1925 (now Art. 21.43, Texas Insurance Code) provides, in effect, that the provisions of the statutes of Texas relating to insurance are conditions upon which foreign insurance corporations (such as the Defendant) shall be permitted to do business within the State of Texas and that any such foreign corporation engaged in issuing contracts or policies within the State of Texas shall be held to have assented to said laws relating to insurance as a condition precedent to its right to engage in such business within the State of Texas. Art. 5054 of the R.C.S. of Texas, 1925 (now Art. 21.42, Texas Insurance Code) provides: "Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby, notwithstanding such policy or contract of insurance may provide that the contract was executed and the premiums and policy (in case it becomes a demand) should be payable without this State, or at the home office of the company or corporation issuing the same." The contract of insurance in question from and after June 8, 1948, was payable to citizens and inhabitants of the State of Texas by the Defendant, an insurance company, doing business within the State of Texas on June 8, 1948, and at all other times pertinent hereto. Thus under the express provisions of the last mentioned statute the contract of insurance in question between the Plaintiffs and the Defendant is a Texas contract covered by the laws of Texas relating to insurance and Defendant's contention to the contrary is wholly without merit.

■ As above indicated, the Defendant contends that Plaintiffs' use of the Wanderer commercially was a breach of the warranty contained in the policy to the effect that the boat would be used only for private use and that because of such

---

6. Hartford Fire Ins. Co. v. Walker, 94 Tex. 473, 61 S.W. 711; Taylor v. United States Fidelity & Guaranty Co. (Tex.Com.App.) 283 S.W. 161; Camden Fire Ins. Co. v. Hill (Tex.Com.App.) 276 S.W. 887; Simmons v. Western Assurance Co. (5th Cir.) 205 F.2d 815, 821; and Maryland Casualty Co. v. Seay (5th Cir.) 56 F.2d 322, 324.

breach the Plaintiffs cannot recover. Art. 4930, R.C.S. of Texas, 1925 (now Art. 6.14, Texas Insurance Code) provides, in effect, that no breach or violation by the insured of any warranty condition or provision of any fire insurance policy or application therefor, upon personal property, shall render void the policy or contract, or constitute a defense to a suit for loss thereon, unless such breach or violation contributed to bring about the destruction of the property. It is obvious from the evidence in this case that Plaintiffs' use of the Wanderer commercially had nothing whatsoever to do with its destruction by fire. That being true, Plaintiffs' breach of the warranty to the effect that the Wanderer would be used only for private use, under the provisions of said Art. 4930 and the construction of that statute given by the courts of the State of Texas, is not available to the Defendant as a defense.[7]

■ Among the conditions of the policy in question was a provision to the effect that the coverage of the policy would be voided in case the property covered thereby was pledged without the consent of the Defendant. As above indicated, the Plaintiffs executed chattel mortgages covering the Wanderer to secure debts of the Plaintiffs without the consent of the Defendant, but the contention of the Defendant to the effect the policy was voided by the actions of the Plaintiffs in executing such chattel mortgages is without merit because under the express provisions of Art. 4890, R.C.S. of Texas, 1925 (now Art. 5.37, Texas Insurance Code) the anti-pledge provisions of the policy are void and of no force and effect.

■ As hereinbefore pointed out, the policy provided, in effect, that the insurance afforded by said policy shall be void in the event the policy or the *interest* insured thereby shall be sold, assigned or transferred without the previous consent of the Defendant. Unquestionably, the Wilburn brothers, the sole owners of the Wanderer, sold and transferred same to the Wilburn Brothers Company, a corporation, all the stock of which was owned solely by the Wilburn brothers, without the consent of the Defendant. Was this such a sale or transfer of the *interest* insured as would void the coverage of the policy and relieve the Defendant from liability to the Plaintiffs for the loss in question? It should be borne in mind that the policy provision just mentioned did not refer to the transfer, assignment or sale of "title." It referred only to the sale, assignment or transfer of the "interest" insured. Under the law of Texas the Wilburn brothers, after the transfer of the Wanderer to the corporation, were the beneficial owners of the Wanderer, and such transfer of the Wanderer to the corporation did not void the coverage of the policy,[8] and this is particularly true since the beneficial interest of the Wilburn brothers in the boat after the transfer of it to the corporation was not of a nature as would be calculated to increase the motive to burn the boat or diminish the motive to guard the property from loss by fire.

Defendant, relying on the provisions of the policy in question above quoted to the effect that concealments or misrepresentations of material facts by the assured will void the policy, contends that the Plaintiffs fraudulently concealed and fraudulently misrepresented certain material facts. The misrepresentations charged by the Defendant are that Plaintiffs misrepresented (1) that they had

---

7. McPherson v. Camden Fire Ins. Co. (Tex.Com.App.) 222 S.W. 211; Citizens State Bank of Dickinson, Texas v. American Fire & Casualty Co. (5th Cir.) 198 F.2d 57, 59; Holston v. Implement Dealers Mutual Fire Ins. Co. (5th Cir.) 206 F.2d 682, 685; Trinity Universal Ins. Co. v. Daniel (Tex.Civ.App.) 202 S.W.2d 266; and Springfield Fire & Marine Ins. Co. v. K. M. A. Fuel Oil Co. (Tex.Civ. App.) 78 S.W.2d 1053.

8. Pacific Fire Ins. Co. v. John E. Morris Co. (Tex.Com.App.) 12 S.W.2d 971; Aransas Pass Harbor Co. v. Manning, 94 Tex. 558, 63 S.W. 627, 629; and Insurance Co. of North America v. O'Bannon, 109 Tex. 281, 206 S.W. 814, 1 A.L.R. 1407.

$40,000.00 invested in the Wanderer; (2) that the Wanderer was not mortgaged or pledged; (3) that the Wilburn brothers were the owners of the boat; and (4) that the winter location of the Wanderer was at the Texoma Boat and Dock Company. The concealments charged by the Defendant are that the Plaintiffs concealed from the Defendant (1) the transfer of the ownership of the Wanderer from the Wilburn brothers to the Wilburn Boat Company, a corporation; (2) the true amount of money Plaintiffs had invested in the Wanderer; (3) the pledging or mortgaging by the Plaintiffs of the Wanderer; and (4) the fact that the boat was being used for commercial purposes.[9]

There is not the slightest evidence that any one or more of the matters concerning which Plaintiffs made misrepresentations as charged by the Defendant or any of the matters concealed by the Plaintiffs as charged by the Defendant in any manner contributed to bring about the destruction of the Wanderer by fire, and for that reason it might well be said that, under the provisions of Art. 4930, Revised Civil Statutes of Texas, 1925 (now Art. 6.14, Texas Insurance Code) and the holdings of the courts in the cases construing that statute cited in Footnote 7, supra, Defendant's defenses based upon fraudulent misrepresentations and concealments on the part of Plaintiffs are without merit. But, be that as it may, there are other reasons why said asserted defenses are without merit.

■ It is the settled law in Texas that an insurer seeking to avoid a policy, such as the one in question, because of misrepresentations must plead and prove not only that a fraudulent misrepresentation was made by the insured but must plead and prove that the misrepresentation was as to a material fact and such misrepresentation was made by the insured with the intention to deceive the insurer and induce it to issue the policy in question.[10] A similar rule applies to concealments, i. e., the burden is on the insurer to prove that the fact or facts concealed were not only material but that the insurer intentionally withheld or concealed from the insurer such fact or facts.[11]

■ After a careful consideration of the evidence in this case, I find and conclude that none of the misrepresentations charged by the Defendant against the Plaintiffs was as to a material fact and none of the concealments charged against the Plaintiffs by the Defendant was as to a material fact. Furthermore, I find and conclude that the evidence fails to establish that any of the misrepresentations charged by the Defendant as having been made by the Plaintiffs or their agent, R. L. McKinney, was made by the Plaintiffs, or any of them, or R. L. McKinney, with the intention to deceive the Defendant and induce it to issue the policy in question, and I find and conclude that the evidence fails to establish that the Plaintiffs, or either of them, or R. L. McKinney designedly and intentionally concealed any of the facts from the Defendant that the Defendant charges as concealments on the part of the Plaintiffs.

In light of the findings and conclusions hereinabove made, it follows that Plaintiffs are entitled to recover from the Defendant the sum of $40,000.00, with interest thereon at the rate of six (6%) per cent per annum from May 12, 1949, the date Defendant denied liability to Plaintiffs for the loss in question and

9. As previously pointed out in this opinion, the Defendant had actual notice of Plaintiffs' use or intended use of the Wanderer for commercial purposes prior to the date of the loss in question, namely, on or about February 9, 1949.

10. Clark v. National Life & Accident Ins. Co., 145 Tex. 575, 200 S.W.2d 820; Great Southern Life Ins. Co. v. Doyle, 136 Tex. 377, 151 S.W.2d 197; Roosth v. Lincoln National Life Ins. Co. (5th Cir.) 269 F.2d 171; and Lumbermens Mutual Casualty Co. v. Klotz (5th Cir.) 251 F.2d 499.

11. Hanover Fire Ins. Co. v. Nash (Tex. Civ.App.) 67 S.W.2d 452, 454 (Writ of Error Refused).

their costs incurred in this Court. Judgment to that effect will be entered.

This Memorandum Decision will constitute the Findings of Fact and Conclusions of Law herein as authorized by Rule 52, F.R.Civ.P., 28 U.S.C.A.