Howard Q. QUESENBERRY, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education, and Welfare, Defendant.

Civ. A. No. 719.

United States District Court
S. D. West Virginia,
at Bluefield.

March 9, 1963.

Charles R. Smith, Bluefield, W. Va., for plaintiff.

Harry G. Camper, Jr., U. S. Atty., Charleston, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

Plaintiff seeks judicial review of the final decision of the Secretary of Health, Education, and Welfare that he was not entitled to a period of disability and to disability insurance benefits under sections 223 and 216(i) of the Social Security Act, as amended. For the reasons hereinafter stated, it is now found that the decision of the Secretary is supported by substantial evidence and that the plaintiff's motion for summary judgment should be denied and that defendant's motion for summary judgment should be granted.

On August 9, 1960, plaintiff, who was then fifty years old, filed an application to establish a period of disability and for disability insurance benefits, claiming that his disability began in August, 1953.[1] This application was denied by the Bureau of Old-Age and Survivors' Insurance both initially and upon reconsideration. On June 26, 1962, a hearing examiner also found that plaintiff was not entitled to a period of disability or to disability insurance benefits. This decision became the final decision of the Secretary when the Appeals Council denied plaintiff's request for review on August 9, 1962.

Plaintiff met the special earnings requirements in August, 1953, the date he alleged that he became disabled. He continued to meet these requirements until December 31, 1956.

To be eligible for monthly insurance benefits based on his application of August 9, 1960, plaintiff must have been under a continuous "disability" at the time of the filing of his application. Plaintiff must also show that he was suffering from an impairment or combination of impairments which could be expected to result in death or to be of a long-continued and indefinite duration,
and which were of sufficient severity to render him unable to engage in any substantial gainful activity, beginning at any time on or before December 31, 1956, when he last satisfied the applicable insured status requirements, and continuing indefinitely thereafter up to the time he filed his application on August 9, 1960. The burden of proof is on plaintiff. Bowden v. Ribicoff, 199 F.Supp. 790 (S.D. W.Va.1961). Thus the evidence had to establish that plaintiff was under a disability as defined by the Act beginning on or before December 31, 1956, when his insured status terminated, for entitlement to insurance benefits or the establishment of a period of disability. The hearing examiner held that plaintiff had not established that he had impairments, either singly or in combination, of such severity as to preclude him from engaging in any substantial gainful activity at any time when he met the special earnings requirements of the Act and continuing thereafter through the date his application was filed. This decision is supported by substantial evidence.

The evidence shows that plaintiff has worked in the mines since his teens and that he worked continuously and without any substantial loss of time due to illness or any other cause until 1951. He suffered blackout spells during 1945 and 1946. His earnings records for those years are not substantially different from immediately prior or succeeding years. He was injured in an automobile accident in 1951, and was hospitalized for treatment for twenty-eight days. He walked with crutches for a period of approximately one year. He subsequently returned to his work in the mines during the third and fourth quarters of 1953. Plaintiff further testified that his impairments were so severe after 1953 that he was incapable of engaging in any substantial gainful activity.

1. Plaintiff had previously filed an application to establish a period of disability on July 21, 1955, which was denied initially and upon reconsideration by the Bureau of Old-Age and Survivors' Insurance. In that petition plaintiff alleged the onset of disability as February 3, 1951. No request for hearing or other further action was taken by plaintiff. That decision, therefore, is final and binding on plaintiff and is not subject to review in this case.

In his application of August 9, 1960, plaintiff listed his impairments as "High blood, Heart condition tumor on right lung." The medical evidence presented by plaintiff to substantiate his claim is not only voluminous but also conflicting. All of this medical evidence will not be discussed here. It would serve no useful purpose to do so. However, a brief summary will be set out below.

First, it should be noted that the vast majority of the medical examinations and reports were conducted and prepared several years after the date of the alleged onset of disability. Their value then as an aid to the arbiter of the facts was somewhat lessened. He was not concerned primarily with the plaintiff's present physical and mental status. He was concerned basically with the date of the onset of the disability which, as a matter of law, had to begin on or before December 31, 1956. If the alleged disability did not begin on or before that date plaintiff could not prevail regardless of his present state of health.

As a second observation it is well to remember that the opinions of doctors must be carefully weighed and evaluated in determining the ultimate issue of disability. Clearly, they are not to be summarily disregarded, but a flat assertion by a doctor that the claimant was disabled or unable to perform any gainful activity is of little assistance to the trier of the facts in arriving at his conclusion concerning plaintiff's disability as contemplated by the Act, especially where there is little, if any, clinical evidence to support such opinions. United States v. Spaulding, 293 U.S. 498, 55 S.Ct. 273, 79 L.Ed. 617; Underwood v. Ribicoff, 4th Cir., 298 F.2d 850 (1962).

The earliest medical report is one dated August 2, 1955 (two years after plaintiff alleges that he became disabled). In that report, Dr. W. B. Young stated that plaintiff had not been under his care for several years. He reported no clinical findings, but concluded as follows: "Chronic heart—unfit for heavy work." In his next report, dated July 19, 1956, Dr. Young stated that plaintiff complained of indigestion (dyspepsia), palpitation of the heart, and epistaxis (nose bleed). He appeared healthy, the size of his heart was normal, although its sounds were irregular. Plaintiff had had a heart lesion (abnormality) since childhood— apparently based on plaintiff's history. Dr. Young found plaintiff's arteries normal and reported the presence of an old fracture of the left leg. The respiratory and nervous systems findings were negative. He found no sugar. He did report a vague diagnosis of "heart disease," but concluded that plaintiff could do very light work part-time. In a third report, dated October 4, 1956, Dr. Young reported a diagnosis of "Hypertension— Heart Leak," which was static. He further noted that plaintiff's cardiac function was markedly limited and advised him not to work. In still another report, dated August 11, 1960, Dr. Young reported that plaintiff had shortness of breath, but he did not report any heart enlargement, angina, puffiness of the ankles or other signs of heart difficulty. Again he gave an indefinite diagnosis of cardiovascular disease. There is no showing that Dr. Young even made any diagnostic tests of the heart and vascular system.

On August 15, 1956, Dr. George E. Snider reported that plaintiff complained of a "fluttering sensation in the pit of stomach which moves to heart." He found a rapid heart beat. Chest X-rays in 1952 and 1956 disclosed a benign tumor or cyst in the right lower lobe above the diaphragm. He found plaintiff's cardiac functional capacity to be only slightly limited. Dr. Snider reported no diagnosis, no therapy, and that plaintiff had not been advised not to work. He concluded:

> "This pt. is quite nervous and has a fixation on his heart. I see no reason why he should not be able to do some type of work."

Dr. Henry F. Warden, Jr., examined plaintiff on January 2, 1957. He found mild hypertension and a normal heart except for a rapid beat. Electrocardiograms made both before and after exer-

cise were normal, except for the rapid beat. There was no valvular or myocardiac disease or coronary artery insufficiency. He concluded, in essence, that plaintiff's heart complaints were emotional and not organic.

In December, 1960 (four years after plaintiff met the special earnings requirements), Dr. James R. Shanklin reported that plaintiff's heart and lungs appeared normal. He found some blood pressure elevation, and a urinalysis revealed three plus sugar. X-rays disclosed an old pleurisy in the left lung and the disappearance of the abnormality (lesion), which had been noted in the right lung three years before. Electrocardiograms made before and after exercise suggested heart muscle damage, but Dr. Shanklin pointed out that plaintiff had been taking digitalis and that exercise had produced no change in the subsequent electrocardiogram. He also reported diabetes. He felt that correction of the diabetes would benefit plaintiff, but he concluded that there was an anxiety which rendered rehabilitation unlikely. Later (January, 1961), Dr. Shanklin reported that diet and twenty units of insulin daily had adequately controlled the diabetes. Plaintiff had continued to complain of chest discomfort, although a repeat electrocardiogram had been normal.

In a discharge summary from the University of Virginia Hospital, dated March 24, 1961, Dr. V. Hollander found, on physical examination, elevated blood pressure readings of 165–140/110–90 and a slightly rapid pulse. His heart rhythm was normal, and no heart murmurs were present. Urinalysis revealed moderately excessive sugar on one occasion and negative sugar on another. An electrocardiogram showed a left ventricular enlargement with a suggestion of an old posterior infarction (heart attack). Chest X-ray was normal, except for thickening of the membrane covering right lung. His reported impressions were: (1) Labile (fluctuating) hypertension, uncomplicated. (2) Marked generalized arteriosclerotic vascular disease (hardening of arteries) resulting in: a) angina with borderline coronary insufficiency b) intermittent claudication (arterial spasms resulting in cramps). c) cerebral insufficiency (decreased circulation in brain) (3) Mild heart failure. (4) Tenia versicolar (a rash).

Dr. H. A. Porter, a general practitioner, examined plaintiff on April 26, 1961. He found diabetes, which he diagnosed as uncontrollable, an enlarged heart. There was no clinical evidence to support these findings. He concluded that plaintiff was unable to work in 1961.

Dr. David M. Wayne, a psychiatrist, examined plaintiff on June 28, 1961. He found that plaintiff was preoccupied with himself, and that he feared the slightest exertion would be fatal. There was no evidence of overt anxiety, and his appearance was normal. Dr. Wayne's diagnosis was anxiety reaction, chronic, severe. He concluded that efforts to treat plaintiff's psychiatric condition would be unprofitable and his prognosis, psychiatrically, was therefore poor. It is significant that Dr. Wayne found no severe psychosis.

■ This court has carefully considered and weighed all of the evidence of record, both objective and subjective, including the evidence upon the first application, and concludes that there is substantial evidence to support the decision of the Secretary that plaintiff is not entitled to disability insurance benefits or to a period of disability under the applicable sections of the Act. The evidence is not even sufficient to support a finding of disability on and prior to December 31, 1956, when his insured status terminated. Whether this court, or any other court, might have reached a different conclusion if it had been acting as the trier of the facts is of no moment if the decision of the Secretary is supported by substantial evidence. As this court observed in Carpenter v. Flemming, D.C., 178 F.Supp. 791, substantial evidence is more than a scintilla, but less than a preponderance. Also if there is enough evidence to justify a refusal to direct a verdict, if the case had been tried before a jury, then there is substantial evidence. Clearly, there is sufficient evidence to

meet these tests, and this court so finds. Therefore, the plaintiff's motion for summary judgment is denied, and defendant's motion for summary judgment is granted.