ISAAC DENNISON *versus* THOMASTON MUTUAL INSURANCE
COMPANY.

It is not necessary to render a policy of insurance void, that there should be
a wilful misrepresentation or suppression of the truth. A mere inadvert-
ent omission of facts material to the risk, and such as the party insured
should have known to be so, will avoid it.

The insured is only bound to state in reply to interrogatories on that subject,
the distance and situation of those buildings, which a man of ordinary ca-
pacity would judge likely to endanger, in case of fire, the building insured;
not those which by any possibility, might cause its loss.

The expression of an opinion, if honestly entertained and communicated, is
not a misrepresentation, however erroneous it may prove to be.

THIS was an action upon a policy of insurance against fire
upon the plaintiff's dwellinghouse and store, &c. in Washing-
ton block, in the city of Bangor, bearing date Jan. 5, 1837.

On the trial of the cause, before SHEPLEY J. the plaintiff
introduced the policy of insurance, which was in the usual
form. Among the conditions of insurance referred to, and
made a part of the policy, was this : — " No insurance will en-
title the insured to any indemnity for loss or damage, if the
description by the applicant of the building or property insured
be materially false or fraudulent; or if any circumstance ma-
terial to the risk be suppressed," &c.

In the application for insurance, in reply to the inquiry,
" what distance from other buildings?" the answer given, (so
far as material to this case,) was, " east side of the block,
small one story sheds, and would not endanger the building, if
they should burn." To the inquiry, " what are the buildings
occupied for, that stand within four rods? how many buildings
are there, to the fires of which this may in any case be ex-
posed ?" no answer was given.

Warren Preston, Esq. called by the plaintiff, testified, that
he was the agent of the insurance company, when the policy
was taken out ; that the plaintiff called upon him to obtain in-
surance, and was informed that the company were not inclined
to take property in the city ; that he wrote to the company,
stating generally the situation of the buildings, and received an

answer, saying, that "Mr. Dennison had better forward an application, to enable the president to decide understandingly;" that he handed the plaintiff a blank application to be filled up; that the plaintiff requested him, the witness, to fill it up, saying, he did not understand it; that he went with him into the building, and the back part, so that he could see all the buildings in the rear, and having seen them, he made out the answers to the questions; that both of them came to the conclusions therein stated; that he sent on the application and representation so made out and signed by the plaintiff, and received in return the policy which he handed the plaintiff; that on Monday after the fire, the plaintiff came and notified him of the loss, and he, by his request, and within ninety days, wrote the company, stating the facts in relation to the loss.

It appeared from the testimony introduced by the plaintiff, that fronting on Wall-street and east of the building insured, stood a two story wooden building, about thirty by sixty feet, occupied for stores, belonging to one Prince; and that from the back wall of the building insured, to the rear of the wooden building designated as Prince's, the distance was fifty-nine feet; that north of Prince's, and separated by a passage of four feet, stood a wooden building belonging to one Call, which fronted on Wall-street; that the building insured fronted Main-street, was of brick, three stories on Main and four stories high in the rear towards Wall-street; that in the rear of the building, and between it and Prince's, stood a one story wood shed; that northerly and adjoining stood another brick building, similar to the one insured, called Richards' building, and in the rear of that also a wooden shed; that the fire commenced in the second story of Call's building, and extended to Prince's, and thence to the wooden shed in its rear; that the fire took on the coving of Richards' building, from Call's building, and extended from thence to the plaintiff's; that the wood shed in rear of Richards' building was on fire when the fire took first in Richards' building; that all these buildings were burnt, except a wood shed torn down; that there was but little air,

except that caused by the fire ; that it was ebb tide, and that the wells were not to be depended upon.

There was evidence, likewise, that all the wooden buildings were on fire when the coving caught. There was likewise testimony as to the condition of the fire department, and its exertions in relation to the extinguishing of the fire.

There was much evidence in relation to the fire, and the situation of the buildings ; but as the facts sufficiently appear from the opinion of the Court, and the preceding statement, it is not fully reported.

A verdict was found for the plaintiff, subject to the opinion of the Court whether the plaintiff, on this testimony, or so much of it as may be legally admissible, is entitled to recover ; the defendants' counsel objecting to all that part of it relating to the condition of the fire department and its exertions, and the statements of its members and others relating to those matters. If the plaintiff is entitled to recover, judgment is to be entered on the verdict ; and if entitled to recover interest from an earlier date than sixty days after affidavit furnished and notice annexed, the verdict is to be amended accordingly.

*Preble*, for the defendants. From the evidence introduced, it appears that the office was unwilling to take risks in Bangor ; that it intended to decide upon all applications made ; and that the question of the propriety of taking the risk was to be determined by the proper officer of the company, and by no one else. In the application made, questions were put, such as were considered material and important by the office. The plaintiff, in his answer, says that the buildings on the east would not endanger the building insured, if they should burn, and neglects entirely to state their distance, though inquired of in relation thereto. Instead of submitting any thing to the judgment of the office, he assumes the responsibility of danger to himself. All danger from these buildings the plaintiff took upon himself. The assured, by the contract of assurance, is responsible for the correctness of all facts stated by him in his application. The defence rests upon the ground that the risk was taken by

an office at a distance, on representations of the assured, which were materially defective. Error in judgment is sufficient; there is no need of the imputation of fraud. If the statements upon which the contract is based are materially defective, the insurance is void. 1 Phillips on Insurance, 80, 103, 111; 2 Phil. on Ins. 96.

The inquiry made, was for the purpose of eliciting facts, not opinions. The concealment of material facts need not be intentional; so far as the rights of the parties are concerned the intention is immaterial.

That the situation of these buildings did endanger the house insured; and that the fact of their position was material, is evident from the result. Here the question being directly put as to the position and distance of the buildings on the east, the case is stronger for the defendants, than had no inquiries been made. 1 Phil. 104. To sustain the verdict the Court must say that the buildings, from which the fire was communicated, and by which the loss was occasioned, did not endanger the building insured.

Preston was not the agent of the defendants to fill up the applications, or to assume any risk whatever, nor does he so assert himself to be. He was merely an agent to receive and transmit applications; he had no authority to take risks. The whole evidence shows that the risk was taken by the defendants solely, upon the application of the plaintiff. If he was agent of any one, he was of the assured. 2 Phil. on Ins. 186. The plaintiff knew that he was no agent of the defendants, and that he had no authority to decide any fact, upon their responsibility.

*Rogers* and *Cutting*, for the plaintiff. It is conceded that a concealment or misrepresentation of a material fact will avoid a policy. There is a material distinction between misrepresentations and concealments. The answer in this case states the existence of buildings to the east of the house insured, but adds that they do not endanger the building. This is merely an erroneous opinion. It is neither misrepresentation, concealment,

nor assumption of liability on the part of the plaintiff.   Concealment consists in the suppression of material facts.   Hughes on Ins. 350 ;  Marshall on Ins. 464 ;  Phillips on Ins. 110.   The law in this respect proceeds on the ground that such concealment is a fraud on the insurer.   *Curry* v. *Com. Ins. Co.* 10 Pick. 536.   The materiality depends on the state of facts at the time when the insurance is effected, and not on subsequent events.   Hughes on Ins. 353 ; *Huguenin* v. *Bayley,* 6 Taunt. 186 ; *Maryland Ins. Co.* v. *Rudin's Adm'r.*  6 Cranch, 338 ; *Livingston* v. *Maryland Ins. Co.* ib. 274 ; *Fletcher* v. *Com. Ins. Co.,* 18 Pick. 419.

The omission to disclose the distance of buildings is not concealment, nor if it was known to the defendants, is it material from what source that knowledge was obtained.   Hughes on Insurance, 352.   Here the fact was known to the agent of the defendant, and his knowledge binds them.   Story on Agency, 131.   If the defendants relied upon any omissions in the application, it was their duty to notify the plaintiff that it would be vacated for that cause.   Any other course would be a fraud on the plaintiff.

If there was any omission of facts, the plaintiff is not responsible therefor.   The agent of the defendant examined the property, made out a description, returned the same to them, upon which they assumed the risk, took the notes of the plaintiff and having done this, they are not to be permitted to deny his authority.   So far as this risk is concerned, the jury have found that no material fact has been concealed, and their decision on all the facts is conclusive.   *Borden* v. *Hingham M. F. Ins. Co.* 18 Pick. 523.

The opinion of the Court was by

WHITMAN C. J. — A verdict was taken for the plaintiff subject to the opinion of the Court, upon a report of the Judge, before whom the trial was had, of the evidence, and rulings by him made in the progress of the trial.   And it is agreed, that such judgment shall be entered, either upon the verdict or upon nonsuit, as the Court may deem reasonable.

The action is upon a policy of insurance against fire, under-written by the defendants, on the dwellinghouse of the plaintiff, situated in Bangor, which was consumed by fire. The defendants, for their defence, rely upon what they consider to have been a misrepresentation made at the time the policy was effected. The misrepresentation alleged is contained in the answer to a written interrogatory, propounded to the plaintiff, as to the distance of other buildings from the premises insured. The answer was in these words; "East side of the block are small one story woodsheds, and would not endanger the buildings if they should burn."

In evidence it appeared, that small sheds projected out from near the back part of the brick block of buildings, (one of which was the house in question,) twenty-four feet, being twelve feet in width, and eight feet stud; and leaving a passage-way, in the rear of them, of fourteen feet wide, adjoining some two story wooden buildings, standing on another street, forty-nine feet from the plaintiff's house, and in which the fire which consumed the plaintiff's house originated.

The first question, which arises, is, was this a misrepresentation, or was there a suppression of the truth tantamount thereto, and material to the risk. It does not seem to be necessary, in order to avail the defendants in their defence, that the misrepresentation or suppression of the truth should have been wilful. If it were but an inadvertent omission, yet if it were material to the risk, and such as the plaintiff should have known to be so, it would render the policy void.

In the case at bar, it has now been rendered undeniable, that the burning of the two story buildings, on another street, endangered the plaintiff's house; and to the interrogatory propounded it now would seem, that the existence of those buildings might with propriety, have been stated. But this does not prove, that, before the occurrence of the fire, it would have been deemed material to name them, as being near enough to put the plaintiff's house in jeopardy. It is not an unfrequent occurrence, after a disaster has happened, that we can clearly discern, that the cause, which may have produced

it, would be likely to have such an effect, while, if no such disaster had occurred, we might have been very far from expecting it. In this case it is essential to determine whether the plaintiff was bound to have known that a fire originating in the two story wooden buildings, would have endangered the burning of his house. If as a man of ordinary capacity, he ought to have had such an apprehension, then he ought to have named those buildings in reply to the interrogatory propounded; for, what a man ought to have known, he must be presumed to have known. This knowledge, in a case like the present, must have been something more than, that by possibility a fire so originating might have endangered his house. This kind of knowledge might exist in regard to a fire originating in almost any part of a city like Bangor; for a fire originating in an extreme part of it, if the wind were high and favorable for the purpose, might endanger all the buildings, however remote, standing nearly contiguous one to another, to the leeward of it. Any danger like this could not have been in contemplation, when the interrogatory was propounded. Such buildings only as were so nearly contiguous as to have been, in case a fire should originate therein, productive of imminent hazard to the safety of the plaintiff's dwelling, could have been in view by the defendants. And the question is, were the two story wooden buildings of that description?

In reference to this question, it may not be unimportant to consider, that the defendants, at the time when this policy was effected, had an agent residing in Bangor, whose business it was to attend, in their behalf, to the applications for insurance from that quarter. It may be believed, that the selection of this individual was the result of knowledge, with regard to his intelligence and capacity for such purpose. It was not, however, his business, perhaps, to prepare representations to be made by applicants for insurance. But it did so happen, that he assisted the plaintiff in preparing the answers to the standing interrogatories, one of which is the interrogatory before named, intended to produce a representation upon which to

found the estimates of the propriety of assuming the risks proposed. He, it seems, examined the premises, looked at the wood sheds, and the two story wooden buildings beyond them. To him it did not seem to have occurred, that the vicinity of those buildings was such as to render it necessary that the two story wooden buildings should be named in answer to the interrogatory; for he, at the request of the plaintiff, penned the reply thereto as he thought proper.

It does not appear that any witness has testified, that, anterior to the disaster, he should have anticipated such an event as within the range of probability. What other individuals of intelligence did not foresee to be likely to occur, could not reasonably be expected of the plaintiff. And what he could not be expected to know, he cannot be considered as culpable for not knowing. And what he could not be expected to apprehend, he could not be bound to communicate; and, in not communicating any such fact, he could not be considered as guilty of concealing it, even inadvertently, and much less wilfully.

As to the wooden sheds, they were named; and the description given of them is precisely in conformity to the truth. They were named, however, in connexion with an opinion, that if they took fire, they would not endanger the house. There is, then, no misrepresentation with regard to their existence. The misrepresentation complained of, in reference to them, is merely in matter of opinion. But opinions, if honestly entertained, and honestly communicated, are not misrepresentations, however erroneous they may prove to be. That this opinion was uttered *bona fide*, and in perfect singleness of heart and purpose, may well be believed, and may fairly be deducible from the fact, that it was expressed in concurrence with the unquestionable belief, at the time, of its correctness, by the confidential friend of the defendants. An opinion so uttered, if not in good faith, might well be complained of, as it might tend to throw the defendants off their guard. In such case, it might tend to show a fraudulent design; and in connexion with evidence of misrepresentation of facts, even short of what

otherwise might be necessary to vacate a contract, would be likely to have that effect.

But it is by no means clear, if the fire had not originated elsewhere than in the sheds, that it would have been attended with essential danger .to the main building. The neighbors and firemen of the city, might be expected to be able to extinguish a fire so originating. Such buildings are easily pulled to pieces; and an engine brought to bear upon them would do great execution. It may therefore, even now, be very questionable, whether the opinion complained of may not be adopted as well founded to a very considerable extent at least.

As to the testimony of the witnesses, touching the condition of the fire department and its exertions, and whatever relates thereto, we see no ground, from thence arising, to question the correctness of the finding of the jury. The most that can be said of that part of the evidence is, that it is irrelevant, and not of a tendency to influence a jury one way or the other.

We are of opinion, therefore, that judgment must be entered upon the verdict, with interest as agreed.