**FIREMAN'S FUND INSURANCE COMPANY, Appellant,**

v.

**WILBURN BOAT COMPANY et al., Appellees.**

No. 18722.

United States Court of Appeals Fifth Circuit.

March 23, 1962.

Edward B. Hayes, Chicago, Ill., Joe A. Keith, Sherman, Tex., Warren C. Ingersoll, Chicago, Ill., for appellant.

Hobert Price, Dallas, Tex., T. G. Schirmeyer, Houston Tex., Gullett & Gullett, Denison, Tex., for appellees.

Before TUTTLE, Chief Judge, and HUTCHESON and JONES, Circuit Judges.

TUTTLE, Chief Judge.

This is the third appearance of this case in this Court. It has been tried three times in the trial court and has been once to the Supreme Court of the United States. On the first trial it appeared that the plaintiffs, Wilburn Boat Company, conceded that specific warranties contained in the policy of marine insurance sued on against use for other than private pleasure, against pledge and against sale, had been violated. The trial judge thereupon held that the contract should be interpreted under general maritime law requiring literal performance of warranties and that this rule could not be affected by state law. This Court affirmed in 5 Cir., 201 F.2d 833.

The Supreme Court, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337, reversed the decision of this Court and of the trial court and held that state laws should be applied in the field of marine insurance, at least "where entrenched federal precedent is lacking," with respect to a specific issue. The Court determined that there was no such entrenched federal precedent as to the effect to be accorded the warranties.

The second trial and appeal are without significance in light of the fact that the case was finally heard and decided on the merits by the district court without the intervention of a jury and a new record completely made as the basis of the appeal that is now before us. The district court concluded that the insurance policy was a Texas contract and that under the Texas law the defenses relied on by the insurance company were not available to it. The court entered a judgment in favor of the plaintiffs.

The defenses asserted by the insurance company were many. They are all urged here on the assumption that the basic findings of evidentiary facts by the trial court can be accepted as true, although the insurer does attack some of the inferences drawn by the trial court from the admitted facts. To place the issues in focus, it is necessary to set out the facts as found by the district court. Before doing so, however, a short explanatory statement will help in understanding the court's findings.

It is not questioned that there were at least three plain breaches of warranty and some eight or nine untrue or false (these terms are used without implying whether they were or were not fraudulent) statements made or facts concealed. These misstatements are of several kinds:

(1) Actual misrepresentations made to the company when the policy was obtained or when the coverage was increased, and which were thus susceptible of being acted on by the company; (2) Statements made on a form submitted to the Wilburn brothers after the coverage had been increased, in order to justify the increase, but which statements may not actually have been acted upon before the loss of the boat. These statements were on a form called an "application" form in the court's findings of fact. This form was not submitted to the insurance company as a part of an application for the policy or for increase in coverage, but as a source of information sought by the company.

The court's findings of fact are:

"At all times pertinent hereto Glenn, Frank and Henry Wilburn, and each of them, were residents and citizens of Denison, Grayson County, Texas and the H. H. Cleaveland Agency of Rock Island, Illinois, hereinafter referred to as · Cleaveland Agency, was a duly authorized agent of the Defendant and was engaged in the writing of insurance, including marine insurance, for the Defendant. On May 22, 1947, the Defendant issued through the Cleaveland Agency its marine hull policy No. YA–28579, the policy in question herein, to Robert D. Marshall, a resident of Rock Island, Illinois, and John Shuler, a resident of Des Moines, Iowa, the then owners of the Wanderer, the yacht or vessel here in question, under the terms of which the Wanderer was insured in the amount of $10,000.00 from loss by fire. At the time such policy of insurance was issued the Wanderer was located in waters at or near Greenville, Mississippi. The policy contained a provision to the effect that it was warranted by the Assured, or the owners of the vessel, that the vessel would be used for private pleasure purposes during the term of the policy and would not be hired or chartered unless permission to do so was granted by indorsement to the policy. Among the conditions of the policy was a provision to the effect that the insurance extended by the policy shall be void in case the policy or the interest insured thereby should be sold, assigned, transferred or pledged without the previous consent of the Defendant. Another pertinent provision of the policy was:

" 'This Entire Policy Shall Be void if the assured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject matter thereof, or, in case of any fraud or false swearing by the Assured touching any matter relating to this insurance or the subject matter thereof; whether before or after loss.'

"In June 1948 and for sometime prior thereto and at all other times pertinent hereto the Defendant had a permit to do and was doing business in the State of Texas.

"On or about June 4, 1948, and at a time when the coverage of the insurance policy in question had been extended to May 22, 1949, Glenn, Frank and Henry Wilburn purchased the Wanderer from Robert D. Marshall and John Shuler for a consideration of $9,000.00. As a result of this purchase each of said Wilburns owned an undivided one-third interest in the boat. At that time the Wanderer was still located on waters at or near Greenville, Mississippi. It was the intention of the Wilburns to move said boat from its mooring in Greenville, Mississippi, to Lake Texoma, a large inland lake located near Denison, Texas, with part of said lake being located in Texas and the remainder thereof located in the State of Oklahoma. The Wilburns moved the boat by water from Greenville, Mississippi, up the Mississippi River to the Red River and then up the Red River to the Lake Texoma Dam near Denison, Texas. The boat was then moved overland around the dam and launched on Lake Texoma in July or August 1948 after certain changes and repairs were made to the boat. After the boat was launched on Lake Texoma it was taken to the Texoma Boat and Dock Company, a boat repair business located in Texas on Lake Texoma, where additional extensive repairs and remodeling were performed on the boat. *At the time the Wilburns purchased the boat they intended to use it for the carrying of passengers for hire on Lake Texoma.* [Emphasis added.]

"For sometime prior to June 4, 1948, and at all pertinent times subsequent thereto R. L. McKinney of

Denison, Texas, owned and operated an insurance agency in Denison, Texas, under the name of R. L. McKinney Agency, writing insurance of various types for various insurance companies he represented. McKinney prior to June 4, 1948, had written various types of insurance for the Wilburns. The Defendant never at any time prior to June 4, 1948, authorized McKinney to solicit or write insurance of any kind for it. At or about the time the Wilburns purchased the Wanderer Frank Wilburn contacted R. L. McKinney in Denison, Texas, and requested McKinney to obtain for himself and his brothers insurance coverage on the Wanderer. McKinney, who was not authorized to write on behalf of any of the companies he represented the marine insurance the Wilburns desired on the Wanderer, made a telephone call to a representative of the Cleaveland Agency in Rock Island, Illinois. In this telephone conversation McKinney advised the Cleaveland Agency representative, namely, one J. B. White, that he, McKinney, was an insurance agent in Denison, Texas, and was acting as agent for Frank and Henry Wilburn who had purchased the Wanderer; that he, McKinney, had no facilities for writing the hull coverage desired and requested White to arrange with the Defendant to continue its coverage of the Wanderer while the boat was being moved from Greenville, Mississippi, to Lake Texoma. Representatives of the Cleaveland Agency then contacted the Chicago office of the Defendant and made known to the Defendant the request made by McKinney for the transfer of the coverage of the Wanderer to the Wilburns. The Defendant, through its Chicago office, agreed to transfer the coverage of the policy in question to the Wilburns, and on June 8, 1948, the Cleaveland Agency wired McKinney at Denison, Texas, to the effect that the Defendant was binding the Wanderer with full marine perils coverage and that indorsements would follow. Thereafter, the Defendant issued an indorsement to the policy in question showing that the name of the assured, effective June 8, 1948, was changed from Robert D. Marshall and John Shuler to Frank and Henry Wilburn. This indorsement was transmitted by the Defendant to the Cleaveland Agency who, in turn, forwarded same by mail to McKinney in Denison, Texas.

"The premium for the coverage extended the Wilburns on the Wanderer, as aforesaid, was the sum of $419.56. The Wilburns paid this premium by issuing their check drawn on a Denison, Texas, bank payable to the Cleaveland Agency, which check they, in turn, delivered to McKinney who, in turn, transmitted it to the Cleaveland Agency. The Cleaveland Agency then caused the check to be presented for payment, and same was paid by the Denison, Texas, bank upon which it was drawn. By letter dated August 6, 1948, McKinney requested the Cleaveland Agency to indorse the policy of insurance in question so as to show Glenn, Frank and Henry Wilburn, d/b/a Wilburn's Boat Company as the assured. By indorsement dated August 6, 1948, the Defendant so indorsed the policy and such indorsement was forwarded to McKinney at Denison, Texas. On October 4, 1948, Defendant again indorsed the policy because of the fact that the Wilburns had installed a diesel marine engine in the Wanderer and as a result of that were entitled to a return of a portion of the premium previously charged by the Defendant. On December 14, 1948, McKinney addressed a letter to the Cleaveland Agency in which he advised, in effect, that the Wilburn Brothers then had an investment of $40,000.00 in the Wanderer, and that they would like to know

what rate would be charged to increase the insurance in question to $40,000.00. On December 20, 1948, the Cleaveland Agency wired McKinney the amount the $30,000.00 additional insurance would cost. By letter dated December 21, 1948, McKinney requested the Cleaveland Agency to increase the coverage of the policy in question by $30,000.00. The Defendant, upon being advised by the Cleaveland Agency of such request for additional insurance, caused such additional insurance to be issued by indorsement to the policy in question effective December 30, [sic] 1948, as a result of which the coverage of the policy in question was increased to $40,000.00. This indorsement was forwarded by the Cleaveland Agency to McKinney at Denison, Texas, by letter dated December 20, 1949. The policy of insurance in question and each and every indorsement thereto, and above mentioned, was delivered by the Cleaveland Agency through the United States mails to McKinney at Denison, Texas, and, in turn, delivered by McKinney to the Wilburns in Denison, Texas, prior to February 25, 1949. At the time the Defendant agreed to transfer the policy of insurance in question to the Wilburns and at all times subsequent thereto it knew that Glenn, Frank and Henry Wilburn, and each of them, resided in Denison, Texas.

"On December 28, 1948, the Defendant's Chicago office wrote the Cleaveland Agency and stated, in effect, that in view of the substantial increase in the coverage they had extended the Wanderer, the Wilburns should have a competent marine surveyor inspect the Wanderer and furnish the Defendant with the surveyor's estimate of its present day value or, in the event a surveyor was not available, a new completed yacht application, together with bills and invoices for the work and for the new installa-tions completed, should be furnished. By letter dated January 25, 1949, addressed to McKinney, the Cleaveland Agency advised McKinney of the Defendant's request that the Wilburns have a competent marine surveyor inspect the vessel and forward to McKinney an application form or blank to be used in making the report of the surveyor's inspection. McKinney made the survey of the Wanderer and the application and survey form furnished McKinney by the Cleaveland Agency, as aforesaid, was completed by McKinney, signed by J. F. (Frank) Wilburn, and transmitted by McKinney to the Cleaveland Agency. The Cleaveland Agency on February 9, 1949, forwarded said completed application and survey report to the Defendant's Chicago office. The application and survey report showed the owners of the Wanderer to be the Wilburn brothers of Denison, Texas; that the cost of the vessel to the Wilburn brothers was $30,000.00 plus $10,000.00 for engine, lighting and fire fighting equipment; that the estimated market value of the vessel was $40,000.00; that the vessel was not subject to any mortgage or other encumbrance; that the water to be navigated by the vessel was Lake Texoma, north of Denison, Texas; that the vessel is used for commercial purposes; that the vessel is chartered; that the summer location of the vessel is Burns Run Resort, Lake Texoma; and that the winter location of the vessel is Lake Texoma Boat & Dock Company. The application and survey report contained additional information descriptive of the vessel, its engines and rigging. Neither this application and survey report nor a copy thereof nor any other statement nor copy thereof made by the Wilburns in connection with the obtaining of the insurance coverage in question was ever attached to the policy in question. The Defendant, after receiving the

application and survey report on or about February 9, 1949, took no further action with reference to the policy prior to the destruction of the Wanderer by fire with the exception of receiving from the Cleaveland Agency a copy of an indorsement to the policy dated October 4, 1948, signed by the Wilburns and showing the replacement of the gasoline engine of the Wanderer with a diesel engine, which indorsement was forwarded to Defendant's Chicago office by letter of the Cleaveland Agency dated February 11, 1949.

"On February 25, 1949, the Wanderer was completely destroyed by fire while it was moored to a buoy in Lake Texoma approximately 300 feet from the shore and in the vicinity of Burns Run Resort, which resort is located on the Oklahoma shore line of Lake Texoma. The place where the Wanderer was moored at the time of its destruction by fire is located in the State of Oklahoma.

"The Wanderer was not used solely for private pleasure purposes during its ownership by the Plaintiffs, but on the contrary said boat was purchased by the Wilburns with the intention of being chartered and used for hire, was remodeled and reequipped for such purposes, and to the extent that patronage was available, was chartered and used for hire from the time of its acquisition by the Wilburns until its destruction by fire. However, during that time the boat was only used for hire three or four times. During January 1949 the boat was damaged as the result of a storm. It was then taken from its regular mooring at Burns Run Resort to Lake Texoma Boat and Dock Company for repairs and remained at Lake Texoma Boat and Dock Company undergoing repairs until three or four days before February 25, 1949, at which time it was returned to its regular mooring at Burns Run Resort. Lake Texoma Boat and Dock Company is located in Texas on the Texas shore of Lake Texoma. From the time the boat was damaged by storm in January 1949 up to its destruction by fire on February 25, 1949, it was not used for commercial purposes of any nature and was not used for any purpose except being returned to Burns Run Resort a few days before February 25, 1949, as aforesaid.

"In July 1948 Glenn, Frank and Henry Wilburn caused a corporation, known as the Wilburn Boat Company, to be formed under and by virtue of the laws of the State of Oklahoma. The capital stock of this corporation was shown to be $40,000.00 and the sole and only asset the corporation ever had was the Wanderer, title to which was transferred to it as hereinafter pointed out. All of the stock of the Wilburn Boat Company was owned at all times by Glenn, Frank and Henry Wilburn. The corporation, Wilburn Boat Company never at any time had a permit to do business in the State of Texas.

"In June 1948 the Plaintiffs, Glenn, Frank and Henry Wilburn, borrowed $10,000.00 from the Citizens National Bank of Denison, Texas, and on August 4, 1948, Wilburn Brothers Boat Company, acting by and through Frank and Henry Wilburn, borrowed an additional $10,000.00 from said bank. On the last mentioned date said Wilburn Brothers Boat Company, acting by and through Frank and Henry Wilburn, executed a chattel mortgage covering the Wanderer in favor of the bank to secure the payment of the $20,000.00 borrowed from the bank. On September 24, 1948, by bill of sale of that date, Glenn, Frank and Henry Wilburn transferred the Wanderer to the Plaintiff, Wilburn Boat Company, a corporation, reciting a consideration of $9,-000.00. On October 25, 1948, Wilburn Boat Company, a corporation,

executed a promissory note in favor of Frank and Henry Wilburn in the amount of $8,000.00, and on the same date said corporation executed a chattel mortgage covering the Wanderer to secure the payment of said $8,000.00. The sale of the boat to the Wilburn Boat Company, a corporation, and the mortgaging of said boat to the Citizens National Bank of Denison and to Frank and Henry Wilburn, as aforesaid, were done without the consent of the Defendant. At the time the Wanderer was destroyed by fire the indebtedness of $20,000.00 to the Citizens National Bank of Denison and the indebtedness of the Wilburn Boat Company, a corporation, to Frank and Henry Wilburn in the amount of $8,000.00, above mentioned, were unpaid and the chattel mortgages, above mentioned, had not been released.

"Immediately upon the Wanderer being destroyed by fire the Plaintiffs notified McKinney and McKinney, in turn, advised the Cleaveland Agency by telegram on February 25, 1949, of the destruction of said boat by fire. The Cleaveland Agency promptly advised the Defendant's Chicago office of the destruction of the boat. The plaintiffs, by letter dated March 3, 1949, addressed to the Defendant and to the Cleaveland Agency, forwarded the Defendant a sworn statement of proof of loss covering the loss of the Wanderer. On May 12, 1949, the Defendant, by letter to the Plaintiffs, returned to Plaintiffs the sworn statement of the proof of loss previously submitted by the Plaintiffs and denied liability to the Plaintiffs for the loss and returned to Plaintiffs the premiums Plaintiffs had previously paid the Defendant on the policy in question. The Plaintiffs refused to accept the premium so returned. In said letter of May 12 it was stated, in effect, that the Defendant was denying liability because: (a) of the

sale of the Wanderer by Glenn, Frank and Henry Wilburn to Wilburn Boat Company; (b) of the mortgaging or pledging of said boat by the Plaintiffs; (c) the Plaintiffs did not have an investment of $40,000.00 in the boat; and (d) the boat had been used for commercial purposes and had not been used for pleasure purposes.

"It is as difficult to determine with any degree of accuracy the amount of money the Wilburns had invested in the Wanderer at the time of its destruction from the record made at the last trial as it was to determine such from the record made at the first trial. However, the record establishes, and I so find, that without placing a value on the time and effort spent by the three Wilburn brothers in connection with the remodeling or rebuilding of the Wanderer the Wilburns had substantially less than $40,000.00 invested in the boat. Notwithstanding the fact that the Wilburns had invested in the Wanderer a sum less than $40,000.00, I find from the evidence that the fair cash market value of the Wanderer immediately prior to its destruction was $40,000.00.

\*    \*    \*    \*    \*    \*

" \*  \*  \* I find and conclude that McKinney was not the agent or representative of the Defendant but as to his dealings with reference to the insurance policy in question was the agent or representative of the Plaintiffs. Under the facts in this case McKinney would be the agent of the Defendant only if the provisions of Art. 5056, Revised Civil Statutes of Texas, 1925 (now Sec. 21.02 of the Texas Insurance Code [V.A.T.S.]) made him such. Said statute as construed by the Courts did not make McKinney the agent or representative of the Defendant."

It must be borne in mind during the following discussion that the appellant's defenses fall into two categories. The first of these consists of *three breaches*

*of warranty.* The second is based upon eight concealments and/or misrepresentations of fact. Three of the eight are the facts that also constituted the breach of the express warranties. The remaining concealments and misrepresentations, if material, also violated an express provision of the contract against concealment or misrepresentation of any material fact or circumstance.

As to the breach of warranties part of its defense, appellant contends that the policy was avoided because the Wilburns (1) used the Wanderer to carry passengers for hire in violation of the warranty that the vessel would not be so used without the previous consent of the appellant; (2) mortgaged the Wanderer in violation of the warranty that the vessel would not be mortgaged without the previous consent of appellant; and (3) sold the Wanderer to the Wilburn Boat Company, a corporation, in violation of the warranty that the vessel would not be sold without the previous consent of appellant.

In the misrepresentation and concealment part of its defense, appellant claims that the policy's *express provision* against misrepresentation and concealment was violated by the appellees' concealment and misrepresentation of the *above facts* (numbered 1, 2 and 3) and by their concealment and misrepresentation of the *following facts:* (4) that the Wanderer was purchased with the *intention* of using it to carry passengers for hire contrary to the warranty that it would not be so used; (5) that the appellees had considerably less than $40,-000.00 *invested* in the Wanderer, con-trary to their statement that they had $40,000.00 *invested* in the Wanderer; (6) that the engine of the Wanderer was a rebuilt one and that it cost appellees only $2,700.00, contrary to their statement that the engine was new and cost $5,000.00; (7) that the winter location of the Wanderer was Burns Run Resort, contrary to their statement that the winter location was Lake Texoma Boat and Dock Company; and (8) that the Wanderer was damaged at Burns Run Resort in January, 1949, contrary to their statement that it had not been damaged.

## DEFENSES BASED ON BREACH OF WARRANTIES

The District Court, applying Texas law, held (A) that the use of the Wanderer to carry passengers for hire was no defense *based on breach of the warranty* against such use because the breach warranted against did not contribute to bring about the destruction of the vessel within the meaning of Article 6.14 of the Texas Insurance Code;[1] (B) that the mortgaging of the Wanderer was no defense based on breach of the warranty against mortgaging because Article 5.37 of the Texas Insurance Code invalidates anti-encumbrance provisions in an insurance policy;[2] (C) that the sale to the corporation was no defense based on breach of the warranty against sale because the sale did not increase the motive of appellees to destroy the boat nor decrease their motive to preserve it.

In view of the clear language of the statutes, and recognizing the undoubted uniform application of the law by the Texas courts to the effect to be given to

---

1. "Art. 6.14. Breach by Insured
"No breach or violation by the insured of any warranty, condition or provision of any fire insurance policy, contract of insurance, or applications therefor, upon personal property, shall render void the policy or contract, or constitute a defense to a suit for loss thereon, unless such breach or violation contributed to bring about the destruction of the property."

2. "Art. 5.37. Lien on Insured Property.
"Any provision in any policy of insurance issued by any company subject to the provisions of this subchapter to the effect that if said property is encumbered by a lien of any character or shall after the issuance of such policy become encumbered by a lien of any character, then such encumbrance shall render such policy void, shall be of no force and effect. Any such provision within or placed upon any such policy shall be null and void."

warranties, we find that neither of the first two breaches of warranty can be urged as a defense. We find, therefore, that in finding against the defenses of breach of warranty arising from parts numbered 1 and 2 above, the trial court followed the Texas law.

As regards the conclusion of the trial court as to the third breach of warranty —the agreement not to sell the boat without express permission of the insuror—the law is not so clear. Since, in view of the basis of our disposition of the case we do not have to resolve that issue we merely state appellant's contention that a breach of a warranty contained in a fire insurance policy on personal property is a good defense if the breach, by its very nature, could not contribute to bring about the destruction of the insured property. See e. g., McPherson v. Camden Fire Insurance Co., 222 S.W. 211 (Tex.Com.App.) Since it is apparent that the sale of the vessel to the corporation could not of itself have contributed to bring about the vessel's destruction by fire, the appellant contends that Article 6.14 does not bar the appellant from relying on the breach of the warranty against sale as a defense.

## DEFENSES BASED ON MISREPRESENTATIONS AND CONCEALMENT

The trial court further held that the concealment and misrepresentation of all of the eight numbered facts above did not violate the provision of the policy relating to concealment and misrepresentation because these facts did not contribute to bring about the destruction of the Wanderer within the meaning of Article 6.14, and, further, because these facts were immaterial to the risk and they were not *intentionally* concealed or misrepresented with the *intent to deceive* the appellant.

In analyzing appellant's contentions in this part of its defense it is vital to remember that they are based on a contractual provision, not on the common law of concealment and misrepresentation. Because of its significance, we quote that provision again:

"This Entire Policy Shall Be Void if the assured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject matter thereof, or, in case of any fraud or false swearing by the Assured touching on matter relating to this insurance or the subject matter thereof; whether before or after loss."

As we see it, then, appellant's defense here raises only two issues for decision. They are: (1) whether the facts concealed and misrepresented were material to the risk, and (2) whether there is anything in the Texas statutes which would prevent appellant from relying on the concealment and misrepresentation of material facts as a defense.

It is clear that the appellees concealed and/or misrepresented the facts set out above.[3] The initial question, therefore, is whether these facts were material to the risk. In this connection, the authorities are virtually unanimous in holding that "a material fact is any fact, 'the knowledge or ignorance of which would naturally influence an insurer in making the contract at all, or in estimating the degree and character of the risk, or in fixing the rate of insurance.'" Indiana and Ohio Livestock Ins. Co. v. Smith, 157 S.W. 755, 756 (Tex. Civ.App.1913). See 24B Tex.Jur. Insurance, Section 187 (1956) and 29 A. Jur., Insurance, Section 701. If this is the test of materiality, it is impossible to see how the District Court could conclude otherwise than that some of the

---

**3.** Appellees concealed and affirmatively misrepresented the intended and actual use of the vessel to carry passengers for hire, and the sale and mortgaging of the vessel. These facts were not disclosed to the appellant when the appellees requested the $30,000.00 increase in coverage in December, 1948. The appellees affirmatively misrepresented the true amount they had invested in the Wanderer when they applied for the increased coverage. This fact along with the facts relating to the use, sale and mortgaging and the other facts set out above, were af-

facts concealed and misrepresented were material to the risk.

### We now deal with each of them separately.

■ As to the contemplated and actual use of the Wanderer *as an excursion boat*, the simple fact is that McKinney, the agent of the appellees to procure insurance,[4] attempted to place the risk with numerous marine underwriters in Texas but was turned down without exception *because these underwriters considered the risk to be too hazardous*. To preclude another rejection, McKinney did not disclose to the appellant that the Wanderer would be used to carry passengers for hire. Moreover, he accepted for the appellees a policy which contained a warranty that it would not be so used, at a time when it was their intention to breach the warranty. Further, he deliberately falsified his reason for seeking insurance from the appellant by stating that "he had no facilities for writing hull coverage, *being located where he was.*" The undisputed evidence in the record shows that insurance policies on excursion boats command a much higher premium than policies on private pleasure craft and that the former policies customarily contain a provision requiring the attendance of a watchman when the vessel is not in operation. In our view, the fact that the appellees intended to and did actually use the Wanderer to carry passengers for hire, was as "material" to the risk as any other fact that could be imagined. Any finding by the trial court to the contrary was clearly erroneous.

In view of this determination that there was a false representation as to the intent of the owners of the prospective use of the boat which was material to the risk, we do not undertake to decide whether the trial court's decision as to the materiality of the other concealments or other misrepresentations would support a reversal of its judgment. We nevertheless consider that it is appropriate to comment briefly on each of these other admitted misrepresentations or concealments.

As to the mortgaging of the Wanderer, appellant contends that the law is clear that the existence of a chattel mortgage, whether filed or unfiled, is material to the taking of a risk on personal property. See Franklin Fire Ins. Co. of Philadelphia v. Fullen, 139 S.W. 2d 370 (Tex.Civ.App.1940).[5] 3 Couch, Insurance, Sec. 784.

Likewise, as to the sale of the boat to the corporation wholly owned by the

---

firmatively misrepresented in the "application" form completed by the appellees. This "application" form contained the following questions and answers:

"(a) Owner of vessel?  A.  Wilburn brothers.

(b) Occupation of owner?  A.  Meat Packers.

(c) Cost of vessel to present owner? A.  $40,000.00.

(d) Any mortgages or encumbrances on vessel? A.  None.

(e) Is vessel ever let, chartered, *or* used for carrying passengers for hire? A.  Chartered.

(f) Winter location of vessel?  A. Lake Texoma Boat & Dock Company.

(g) Any prior damage to vessel?  A. None.

(h) Engine new or used?  A.  New.

(i) Cost of engine if purchased separately.  A.  $5,000."

If appellees had been telling the truth, the answers would have been as follows:

(a) A.  Wilburn Boat Company, Inc.

(b) A.  Excursion and chartering business.

(c) A.  About $25,000.

(d) A.  Yes.

(e) A.  Charted *and* used for carrying passengers for hire.

(f) A.  Moored off Burns Run Resort.

(g) A.  Yes.

(h) A.  Used.

(i) A.  $2700.

4.  Of course, there can be no doubt that the appellees are bound by the conduct of their agent, McKinney.  Interstate Fire Ins. Co. v. Sorrells, 295 S.W. 242 (Tex.Civ.App.1927);  St. Paul Fire & Marine Ins. Co. v. Garnier, 196 S.W. 980, 985 (Tex.Civ.App.1917).

5.  The Texas courts so hold despite the fact that anti-encumbrance provisions are invalid under Article 5.37 of the Texas Insurance Code, quoted in note 2, supra.

Wilburn brothers, appellant points to the most significant fact that one of the owners testified that the sale to the corporation had as its primary purpose the safeguarding of the Wilburns as individuals from any personal liability claims which might arise if a passenger was to be injured aboard the Wanderer. This, says the appellant, would diminish the motive of the Wilburns to keep the boat in safe condition. Appellant contends that this factor "would naturally influence an insurer in making the contract at all, or in estimating the degree and character of the risk, or in fixing the rate of insurance." Indiana and Ohio Livestock Ins. Co. v. Smith, supra.

In urging that the amount of appellees' actual investment in the Wanderer ("cost of present owner") was material, the insurance company points to the fact that the question in the "application" form asked the appellees both for the "estimated market value" of the vessel *and* the "cost of vessel to present owner." It is argued that since "the extent of the interest of the assured in the property insured measures the moral hazard, and hence is always material to the risk of the insurance," Connecticut Fire Ins. Co. v. Manning, 8 Cir., 160 F. 382, the fact that the vessel may have had a market value of $40,000 at the time of the loss does not affect the materiality of the appellees' actual investment in the vessel.

Touching on the response to the question in the application form as to the winter location of the vessel, appellant points to the fact that the Lake Texoma Boat & Dock Co., where the owners *said* the vessel was located in the winter, is a large concern where a great many boats are stored and which maintains a watchman service at all times; whereas Burns Run Resort, where the vessel *was actually moored* in the winter and where it was destroyed by fire, is a relatively secluded section of beach. Appellant says that this answer was patent-

ly material to influencing the insuror's judgment as to whether to take or increase the risk.

Although the true nature and cost of the engine, as compared to the facts stated by the insured, represent a relatively small amount of money, appellant insists that the bald statement by the insured that the engine was *new* and *cost $5,000,* whereas it was a *reconditioned engine* and *cost $2,700,* is a sufficiently material false representation to avoid the policy under the warranty against false representations.

Finally, the appellant insists that the false answer by the Wilburns stating that there had been no previous damage to the boat, whereas it had been damaged in a storm and had been repaired at some considerable cost, was likewise a breach of the warranty against false representation constituting a good defense against recovery on the policy.

Because of the fact that we have found that there was a false material representation at the time the policy was obtained by the insured, we do not consider it necessary to pass upon these several contentions based on the other misrepresentations. This also makes it unnecessary for us to decide whether the fact that some of these false representations were contained in the form submitted by the insurance company after the increase of the coverage would destroy their availability as defenses on the ground that the form on which they were written is what is normally called an "application" form.[6]

We next come to appellees' contention that a fact cannot be material if it relates to a risk which is expressly covered by a contractual warranty. In other words, they claim that the false representation touching on the use of the Wanderer for the carrying of passengers instead of for pleasure purposes was immaterial simply because there was a spe-

---

6. The point that is here made is that no statements contained on this form can be considered as a defense to a suit on the policy because under Article 21.35 of the Texas Insurance Code such misrepresentation cannot be raised if contained in an "application" unless the application is actually attached to the policy.

cific warranty relating to this use. Whatever may be the law elsewhere, however, it seems clear that this is not the law in Texas. In Franklin Fire Ins. Co. v. Fullen, supra, the insuror defended a suit on the policy by claiming that the insured had falsely represented that the insured property was unencumbered. Although the policy contained an anti-encumbrance clause which, of course, was invalid under Article 5.37 of the Texas Insurance Code, the Court held that the encumbrance was a material fact and allowed the insuror to raise the defense of misrepresentation of this fact.

■. The District Court further erred in assuming that Article 6.14 of the Texas Insurance Code applies to a policy provision against concealment and misrepresentation. Article 6.14, as noted above, provides, in effect, that no breach of any provision of an insurance policy shall constitute a defense to a suit on the policy unless the breach contributed to bring about the destruction of the property. But, as we have already noted above, the Texas courts have long held that Article 6.14 does not apply to a breach which, by its very nature, could not contribute to bring about the destruction of the property. See e. g., McPherson v. Camden Fire Ins. Co., 222 S.W. 211 (Tex.Com.App.1920). It is obvious that a concealment or misrepresentation by the assured could never contribute to the destruction of the insured property. The *facts* concealed might, in some cases, bring about the destruction but not the *misrepresentation or concealment* of them. The policy provision against concealment or misrepresentation was not designed to prevent fires; it was meant to assure the appellant insurance company that it would have all the information necessary to the handling of the insurance.

■ That Article 6.14 is not applicable to the clause under consideration is, we think, conclusively demonstrated by

the fact that Article 21.16 of the Texas Insurance Code expressly provides that:

"Any provision in any contract or policy of insurance issued or contracted for in this State which provides that the answers or statements made in the application for such contract or in the contract of insurance, if untrue or false, shall render the contract or policy void or voidable, shall be of no effect, and shall not constitute any defense to any suit brought upon such contract, unless it be shown upon the trial thereof that the matter or thing misrepresented was material to the risk or actually contributed to the contingency or event on which said policy became due and payable, and whether it was material and so contributed in any case shall be a question of fact to be determined by the court or jury trying such case."

If this clause of the insurance contract were within the purview of Article 6.14, then Article 21.16 would be virtually meaningless, and the enactment of the latter article would be "a work of supererogation not to be attributed to the legislature." McPherson v. Camden Fire Ins. Co., supra, at 215.

■ The reference to Article 21.16 poses the next question, and that is, what effect, if any, does that article have with respect to appellant's defense of concealment and misrepresentation? Appellees contend that, under Article 21.16, concealment and misrepresentation is no defense unless the matter concealed or misrepresented was material to the risk *and* contributed to the loss. This contention is based on the last sentence of the statute, which provides that the *question* (not questions) of materiality *and* contribution should be left for the jury, and it is supported by a dictum in one Texas case. See Trinity Reserve Life Ins. Co. v. Hicks, Tex.Civ.App., 297 S.W.2d 345, 349. There are numerous cases to the contrary,[7] however, and, in our judg-

7. See e. g., Fidelity Union Fire Ins. Co. v. Pruitt, 23 S.W.2d 681, 684 (Tex.Com. App.1930); Aetna Accident & Liability Co. v. White, 177 S.W. 162, 165 (Tex. Civ.App.1915); Indiana & Ohio Livestock Ins. Co. v. Smith, 157 S.W. 755,

ment, these latter cases adopt much the sounder view.

It is obvious that a fact can be material to the risk without its contributing to bring about the destruction of the insured property. As the Court stated in Inter-Ocean Ins. Co. v. Ross, 315 S.W.2d 71, 73–74 (Tex.Civ.App.1958), "it does not disprove that a fact may have been material to the risk because it had no actual subsequent relation to the manner in which the event insured against did occur." On the other hand, it is virtually impossible to conceive of an *immaterial* fact contributing to bring about the destruction of the insured property. This being so, it becomes apparent that appellees' construction of the statute would render the materiality requirement in the statute absolutely useless. Assuming, as we must, that the reference to materiality in the statute was intended to have some meaning, it is impossible to justify an interpretation of the statute which would deprive it of all effect. This is precisely what the appellees urge us to do.

■  Moreover, Article 21.16, by its terms, does not even apply (a) to *concealments* or (b) to misrepresentations not contained in the application for insurance or the policy itself. Thus, it would not apply, for example, to McKinney's *concealment of the intended use* of the Wanderer when applying for the insurance or to the oral misrepresentation made by McKinney in December, 1948, when he applied for the increase in coverage, as to the amount the appellees had invested in the Wanderer.

There remains for consideration the District Court's conclusion that the appellant could not succeed in its defense of concealment and misrepresentation unless it proved (a) that the appellees *intentionally* concealed and misrepresented material facts *with the intent to deceive* the appellant by inducing it to issue the policy on the basis of these concealments and misrepresentations. In other words, the District Court assumed that the appellant was required to prove all the elements of a common law action of deceit, factor (a) above being the fraudulent motive, and factor (b) being the element of reliance.

■  In so holding, the District Court failed to appreciate the fact that appellant's defense was not that it had been deceived by the appellees, but that the appellees had breached a specific provision of the insurance contract. That provision unambiguously states that the policy is to become void if the insured conceals or misrepresents a material fact "whether before or after loss." There is no requirement that the insured have an intent to deceive the appellant, or that the appellant rely on the concealments and misrepresentations in issuing the policy. Indeed, the language of the provision plainly provides that the policy shall be rendered void if the insured conceals or misrepresents a material fact *or* "in case of any *fraud* or false swearing by the Assured." If the concealment and misrepresentation which will void the policy must amount to common law fraud, then the express and separate reference to fraud in the provision is meaningless.

But we need not rely solely on this reasoning to support this view of this case. In Chaachou v. American Central Ins. Co., 5 Cir., 241 F.2d 889, this Court had before it a policy provision similar to the one under consideration here.[8] The insured, who had made false statements in his proof of loss, contended that the false statements were no defense to his suit unless the insuror

---

766 (Tex.Civ.App.1913). In 24B Texas Jurisprudence, Insurance, at page 417, it is said:

"Under the statute [Article 21.16], a representation or warranty, even though false, does not avoid a policy or afford a defense unless the matter misrepresented was material to the risk *or* actually

contributed to the loss. [Emphasis added].

8. It is interesting to note that the policy provision under consideration in Chaachou, unlike the provision here, referred to "wilful" concealment or misrepresentation.

could demonstrate that it had relied on these statements. We rejected this contention, and, in so doing, made the following remarks:

"We think that, as against this attack, the Court's charge was eminently correct. We start, first, with a contract which, plain in its terms, cannot be ignored by invoking the principle which deplores forfeitures, Fidelity-Phenix Fire Insurance Co. of New York v. Benedict Coal Corporation, 4 Cir., 64 F.2d 347, certiorari denied 289 U.S. 762, 53 S.Ct. 795, 77 L.Ed. 1505, or construes policies most strongly against the insurer and in favor of the assured, Palatine Insurance Co. v. Whitfield, 73 Fla. 716, 74 So. 869. Thus the agreement of the parties called precisely for honesty and fair dealing by the assured and unless there be a public policy against people contracting to be honest and refraining from wilful false swearing and misrepresentation, it is a contract which, as any other, ought to be enforced. * * *

"The contract does not spell out that it is only false swearing, misrepresentation, concealment or fraud which is successful that avoids the policy. Nor is there any reason why any such condition should be read into it. Clearly, in the absence of a statute, the law, which is founded on truth and justice, will not regard it as unsound that a person has lost the benefit of the contract by wilful, immoral, dishonest acts which the contract itself condemns.

"Moreover, if the law out of some misgivings about forfeitures, were to require that the insurer demonstrate that it had been misled to its prejudice by the fraud, the policy provision would both be virtually worthless and put a premium on dishonest dealings by the assured. For if, by its own investigation, inspired perhaps by suspicions of the assured's efforts to misrepresent, the insurer satisfied itself that a fraud

had been attempted and declined to pay, such a rule would mean that the assured's claim would then stand as though no dishonest acts whatsoever had been practiced. The mendacious assured, surveying the possibilities and contemplating prospective tactics and strategy in the handling of his claim, would sense immediately that *vis-a-vis* himself and the underwriter, there would be no risk at all in his deceit. If it worked, he would have his money and, at worst, could be compelled to disgorge only by affirmative suit by the insurer if the fraud were discovered in time to be legally or practicably effective. If it didn't work —if, before consummation, fraud was detected—he would suffer no disadvantage whatsoever. It would be an everything-to-win, nothing-to-lose proposition.

"Additionally, such a rule would cast the underwriter in a role for which it is unsuited and in a process which the general good, out of long experience, considers best performed by government machinery. Convinced, as here by its own investigation of the claim, of dishonest acts by the assured, it would then have to undertake the [task] of segregating truth from untruth, ferreting out the honest from the dishonest, choosing the right from amongst the wrong with all or much of the factual material coming from one now considered to be morally unreliable.

"The public interest is not furthered by these likely consequences of reading into the contractual language this burden nowhere expressed. A judge-made policy which thus gives advantage to dishonesty will retard, not accelerate, the orderly adjustment of insurance losses. If the insurer, from the strong language of the contract interpreted in equally plain terms by the law, is entitled to assume that the assured is dealing honestly and fairly, asserting only that which in good faith

**646**

is believed to be the substantial truth of the matter, the claim can be handled in a spirit and atmosphere of confidence. If, on the other hand, the insurer must realize that fraud is significant only if it is finally successful, that the slate is wiped clean if its own investigation uncovers the assured's cozening, the setting may then become one of hostile antagonism, reluctance and apprehension forcing more, not less, litigation."

241 F.2d at 892–893.[9]

■ There is nothing in the Texas statutes requiring an intent to deceive and reliance if concealments and misrepresentations are to avoid a policy under an express contractual stipulation.[10] Rather, the Texas legislature had affirmatively indicated its position with respect to these contract provisions by providing that they shall not bar a claim unless the concealment or misrepresentation relates to a material fact or a fact which contributes to bring about the loss.[11] The law of deceit applies to insurance contracts as it does to all other contracts, but if the contracting parties stipulate that deceit is unnecessary to put the contract at an end, it is not for the courts to question the wisdom of their decision. If such stipulations are regarded as contrary to public policy, the legislature or the courts can say so. Since, however, neither the legislature or courts of Texas

have made this decision, we can not see how or why we should make it for them.

■ But even if we were to formulate such judge-made law in the face of the contractual provision, appellees, in our opinion, would be no better off. Nothing is better established in the law of *marine* insurance than that "a mistake or commission material to a marine risk, whether it be wilful or accidental, or result from mistake, negligence or voluntary ignorance, avoids the policy. And the same rule obtains, even though the insured did not suppose the fact to be material." 3 Couch Insurance, at page 2568. And it is stated in 29 American Jurisprudence, Insurance, at page 956:

"§ 690.—IN CASE OF MARINE INSURANCE.—'Concealment,' in the law of marine insurance, is the failure to disclose any material fact or circumstance in relation to the subject matter of the contract which may increase the liability to loss, or affect the risk or obligation assumed, and which is, in fact or law, within, or ought to be within, the knowledge of one party, and of which the other party has no actual or presumptive knowledge. In the case of marine insurance the insured must disclose all facts material to the risk, and in default of such duty the contract may be avoided by the insurer. In other words, an applicant for marine insurance must state all material facts which are known

9. See also Burritt v. Saratoga County Mut. Fire Ins. Co., (N.Y.) 5 Hill 188, 40 Am.Dec. 345; Dennison v. Thomaston Mut. Ins. Co., 20 Me. 125, 37 Am.Dec. 42; Modern Woodmen of America v. Atcheson, 219 S.W. 537 (Tex.Civ.App. 1920).

10. It is extremely significant that Article 21.16 has been held to apply only to nonfraudulent misrepresentations. St. Paul Fire & Marine Ins. Co. v. Garnier, 196 S.W. 980, 985 (Tex.Civ.App.1917). In other words, if a false statement is made with the intent to deceive the insuror, the policy is rendered void by a contractual provision against misrepresentation even if the misrepresentation relates to an immaterial fact which did not con-

tribute to bring about the loss. It is clear, therefore, that under Texas law breach of a contractual provision against misrepresentation should be good defense if (a) the misrepresentation was fraudulently made, *or* (b) the fact misrepresented was material, *or* (c) the fact misrepresented contributed to bring about the loss.

11. Note that Article 21.19 of the Texas Insurance Code, which applies to false statements in *proofs of loss*, provides that no such misrepresentation shall constitute a defense to a suit on the policy unless it was *fraudulently made*, related to a material fact and *misled the insuror*. See Fireman's Fund Ins. Co. v. Reynolds, 85 S.W.2d 826, 829 (Tex.Civ.App.1935).

to him and unknown to the insurer. It has been said that the insured is bound to communicate every material fact within his knowledge not known or presumed to be known to the underwriter, whether inquired for or not; and that a failure in either particular, although it may arise from mistake, accident, or forgetfulness, is attended with the rigorous consequences that the policy never attaches and is void, for the reason that the risk assumed is not the one intended to be assumed by the parties.

"The special rules regarding disclosure as to marine insurance do not apply to 'inland marine insurance' policies covering transportation of goods on land."

Although we have found no Texas case expressly applying this rule, there is no indication that the Texas courts have departed from this firmly established principle of marine insurance.[12] Indeed, the only indication is to the contrary. In 24B Texas Jurisprudence, Insurance, (1960), it is said at page 391:

"It is a concealment when the insured has knowledge of a fact material to the risk which honesty, good faith and fair dealing require that he should communicate to the insurer, but which he withholds.

"With respect to concealment the doctrine applies to all kinds of insurance *but it is much more strictly applied in marine risks* * * *."

This statement then refers the reader to that section of American Jurisprudence quoted above. Under this rule, therefore, the absence of an intent to defraud the insuror would be of no help to the appellees.

The appellant contends, furthermore, that even though the insurance company was required to demonstrate that the appellee had a fraudulent motive and that the insurance company was induced to take action by the concealments and misrepresentations, these elements of common law fraud were proved in this case as a matter of law. We do not here set out the circumstances pointed to by appellant to support this argument because we are firmly convinced that these elements are not required to be shown under the Texas Law. It is not inappropriate to say, however, that the many misrepresentations already related and other circumstances not heretofore detailed do constitute strong evidence of fraud.

In conclusion, because of the clear breach of the warranty against false misrepresentations and concealments, we conclude that the trial court committed error in entering judgment for the appellee.

The judgment is, therefore, REVERSED and the case is REMANDED to the district court with directions that it enter a judgment for the defendant.

Reversed and remanded.

---

12. We are merely assuming here that Texas law is applicable to a defense of concealment raised in connection with a marine insurance policy. There is good reason behind appellant's argument that federal maritime law, rather than state law, governs that issue. Appellant contends, and we agree, that Fireman's Fund Ins. Co. v. Wilburn Boat Co., 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337, merely held that state law is to be applied in the field of marine insurance only where "entrenched federal precedent is lacking" with respect to a specific issue. This is the interpretation which the Supreme Court itself and the Court of Appeals for the Second Circuit has placed on that decision. See Kossick v. United Fruit Co., 365 U.S. 731, 742, 81 S.Ct. 886, 6 L.Ed.2d 56, and Purofied Down Products Corp. v. Travelers Fire Ins. Co., 2 Cir., 278 F.2d 439, 441, n. 1. Since the above stated rule of concealment in marine insurance is solidly entrenched in our body of federal maritime law (see .e. g., McLanahan v. Universal Insurance Co., 26 U.S. 170, 7 L.Ed. 98, 185), it would seem that this rule should apply in the instant case. Because, however, we believe that the same rule obtains in Texas, this point is of minimal significance to a decision here.

648

HUTCHESON, Circuit Judge (Dissenting).

When the parties were first here in 1953[1] and later when they were before the Supreme Court on certiorari,[2] the issues on review were defined by the findings of the late Judge Bryant who heard the cause originally. These were that plaintiffs had violated specified warranties of the marine policy sued on against pledge, sale, and other use than for private pleasure unless, with the insurer's special permission, endorsed on the policy. Judge Bryant ruled: "I don't think any other findings are necessary", inasmuch as he then understood and held that the rule that requires literal performance of warranties was a rule of the general maritime law where a marine policy was concerned which could not be affected by state statutes, and this court, in 201 F.2d 833, supra, in principle affirmed this ruling.

On appeal to the United States Supreme Court, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337, supra, the decision of this court and that of Judge Bryant, to the effect that literal performance as matter of law irrevocably governed the rights of the parties to a marine policy and state statutes could have no effect on that law, were reversed and the cause was remanded to the United States District Court for a trial under appropriate state law. The majority opinion of the Supreme Court concluded as follows:

"Under our present system of diverse State regulations, which is as old as the Union, the insurance business has become one of the great enterprises of the Nation. Congress has been exceedingly cautious about disturbing this system, even as to marine insurance where Congressional power is undoubted. We, like Congress, leave the regulation of marine insurance where it has been—with the States.

"The judgments of the Court of Appeals and the District Court are reversed and the cause is remanded to the District Court for a trial under appropriate state law."

In the light of this opinion, the district judge conducted a complete new trial on the facts and the law, and, in the findings of fact and conclusions of law, set out in his memorandum opinion,[3] dealt fully with all of the issues. Concluding that the contract was a Texas contract and that Texas law controlled, he found and gave judgment for the plaintiff, and this appeal is from that judgment.

The appellant is here taking the same position that it has taken on the prior hearings and appeals, that since the policy in question was a marine policy, general maritime law controlled, a strict and literal compliance was required, and Texas statutes, enacted to mitigate the rigors and the hardships of such strict policy construction, by introducing issues of fact,[4] where there had been only issues of law, were without application. Attacking each of the district judge's findings of fact and conclusions of law in plaintiffs' favor, therefore, as without basis in fact and in law, appellant insists that the judgment must be reversed. The majority opinion completely espouses appellant's views. I cannot accept them.

On the contrary, I am of the clear opinion: that under the controlling decisions, including that of the Supreme Court in this case, the district judge correctly construed and applied the Texas statutes; that his findings of fact are well supported by the evidence of record; and that his legal conclusions are in accord with the controlling law.

The record is a large one, the facts and issues are voluminous. Because, however, of the full, thorough, and accurate way in which the district judge has in

1. Wilburn Boat Co. v. Fireman's Fund Ins. Co., 201 F.2d 833 (1953).

2. Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1954).

3. Wilburn Boat Co. v. Fireman's Fund Ins. Co., D.C., 199 F.Supp. 784.

4. See "Law and Fact in Insurance Cases", Joseph C. Hutcheson, Jr., Texas Law Review, Vol. XXIII, No. 1.

his memorandum opinion set the facts out and canvassed and applied the controlling facts and law in the case, it will be sufficient for me to say that I approve, adopt and affirm his findings and conclusions, for the reasons and upon the considerations stated in his opinion. So approving, I respectfully dissent from the opinion and judgment of the majority.